**THE LAW OFFICES OF JOHN J. ZIDZIUNAS, LLC**
**JOHN J. ZIDZIUNAS, ESQUIRE**
**921 Bergen Avenue, Suite 822**
**Jersey City, NJ  07306**
**201-798-7979**

**MARK B. FROST & ASSOCIATES**
**MARK B. FROST, ESQUIRE**
**Pier 5 at Penn's Landing**
**7 North Columbus Boulevard, 2nd Floor**
**Philadelphia, PA 19106**
**215-351-3333**
**Attorneys for Plaintiff**

RECEIVED, CLERK
U.S. DISTRICT COURT

2009 JUN 24  A 10: 15

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| **Thomas Aiellos** | : | |
| **67 Poplar Avenue** | | |
| **Hackensack, NJ 07601,** | : | **CIVIL ACTION** |
| | | **NO.** 09-3076 |
| **Joseph Inglima** | : | (WJM) |
| **69 Island Terrace** | | |
| **Oakland, NJ 07436,** | : | |
| | | |
| **Donald Pierce** | : | |
| **231 Jefferson Avenue** | | |
| **River Edge, NJ 07661,** | : | **JURY TRIAL** |
| | | **DEMANDED** |
| **Scott Sybel** | : | |
| **795 Millbrook Road** | | |
| **River Edge, NJ 07661,** | : | |
| | | |
| **Anthony Duardo** | : | |
| **38 Moonachie Road, Unit 101** | | |
| **Hackensack, NJ 07601,** | : | |
| | | |
| **Ralph Cavallo** | : | |
| **151 Prospect Avenue, Suite 18A** | | |

1

Hackensack, NJ 07601,                                      :

                and                                      :

Vincent Riotto,                                            :
21 Hoffman Street, 2nd Floor
South Hackensack, NJ 07606,                                :

                Plaintiffs,                :

            v.                                      :

                                                          :

Chief C. Kenneth Zisa,
Hackensack Police Department                               :
225 State Street
Hackensack, NJ 07601,                                      :

Joseph Zisa, Esquire                                       :
City of Hackensack
65 Central Avenue,                                         :
Hackensack, NJ 07601,
                                                          :

Tomas Padilla
Hackensack Police Department                               :
225 State Street
Hackensack, NJ 07601,                                      :

Kevin Toomey                                               :
Hackensack Police Department
225 State Street                                           :
Hackensack, NJ 07601,
                                                          :

Anthony Trezza
Hackensack Police Department                               :
225 State Street
Hackensack, NJ 07601,                                      :

Phillip Carroll                                            :
Hackensack Police Department

**225 State Street**                          :
**Hackensack, NJ 07601,**

                                              :

**Captain Thomas Salcedo**
**Hackensack Police Department**              :
**225 State Street**
**Hackensack, NJ 07601,**                     :


                    **and**                   :


**City of Hackensack**                        :
**65 Central Avenue**
**Hackensack, NJ 07601**                      :


                    **Defendants.**           :

---

## INTRODUCTION

1.    This action for declaratory, injunction, monetary and other appropriate relief is

      brought by Plaintiffs to redress the intentional violations by the Defendants of the

      rights secured to Plaintiffs by the laws of the United States of America and the

      statutory and common law of the State of New Jersey.  Among other things,

      Plaintiffs seek recovery for damages suffered by Defendant Kenneth Zisa's illegal

      schemes of using his office of Chief of Police for the City of Hackensack, New

      Jersey, to extort monies from police officers to support his candidacies for public

      office and/or candidates he supports for elected public office and offices within the

      Policemen's Benevolent Association of Hackensack, New Jersey.  If police

      officers do not financially support his candidacy or support candidates in the PBA,

      Defendant Zisa uses his office to transfer police officers within the department to

3

disciplinary type assignments and undesirable assignments as well as demote

officers as well as fail to promote them as a means of retaliation. Additionally,

Zisa also institutes unlawful disciplinary charges against police officers for their

failure to support these candidacies. Plaintiffs are City of Hackensack police

officers and/or former police officers who failed to support candidacies of Chief

Zisa and those he supported. Each were retaliated against, as set forth above and

as will be set forth in this Complaint.

2.     Defendant Charles Ken Zisa has been the Chief of Police since 1995 and was

appointed to the position by his brother Jack Zisa who was the Mayor of

Hackensack at that time. Defendant did not take any civil service position to

become the Chief, and none was requested by the City of Hackensack. Zisa was a

state assembly person from Bergen County, 37th District from 1994 through 2002

which coincided with him being Chief of Police. In his career as the Chief, he has

used the office in its official capacity for his own financial and political gain. In

any election that he has been a candidate or for candidates he supported, he has

extorted monies from Plaintiff police officers and other police officers with the

threat of retaliation and through retaliation as previously set forth. He has engaged

in this pattern since he has been Chief of Police and has engaged in the unlawful

scheme by using his position as Chief of Police to influence elections that include

the following: State Assembly from 1994 to 2002; Candidate for State Senate in

4

2005; Candidate for Sheriff of Bergen County in 2001; State Assembly in 2007

and 2009; he supported candidates Vernon Watton, Bernadette McPherson and

David Ganz for County Freeholders in November of 2008 with monies illegally

obtained as set forth above and will be set forth in the Complaint; financially

supported Captain Tommy Padilla of the Hackensack Police Department for

County Freeholder in 2005 and the subsequent fundraiser for that position; and

unlawfully influenced the election for PBA State Delegate of Police Officer Tina

Clouse in June 2008 against Police Officer Joseph Inglima.  He has further

interfered with the PBA Local 9 election wherein he supported Police Officers

Phillip Carroll and Tina Clouse for President and Vice President of the PBA in

May of 2009, against Police Officer Anthony Ferraioli and Police Officer Aldrin

Lamboi.

3.     Plaintiff Scott Sybel, in addition to having been retaliated against as set forth

above, was forced to permit Chief Zisa to become a partner in rehabilitating and

developing homes under the threat of ruining Plaintiff's career.  Defendant Ken

Zisa with the assistance of his cousin, Joseph Zisa, the City Attorney for the City

of Hackensack, formed a corporation known as Cranberry Associates, LLC, which

purchased properties and rehabilitated homes for a profit.  Despite selling

properties in excess of one million dollars, the Plaintiff has only received $18,000

from the sale of one of the properties and Defendant Ken Zisa and Defendant

Joseph Zisa have failed to provide an accounting and give Plaintiff his share of the proceedings from the sale of four (4) properties.

4.      Essentially, Zisa extorted monies from the Plaintiffs and other officers by using his office in its official capacity in violation of the First Amendment, Fourteenth Amendment and in violation of the Civil RICO statute.

5.      Each of the Plaintiffs in the within action were retaliated against, either demoted and/or detrimentally transferred and/or were not promoted for supporting candidates opposed to Ken Zisa and/or failing to contribute to the various aforementioned elections.

## JURISDICTION

6.      This action is brought pursuant to 42 U.S.C. §§1983 and 1985; 18 U.S.C. 1962(b); and the First and Fourteenth Amendments of the United States Constitution. Jurisdiction is founded on 28 U.S.C. §§ 1331 and 1343(3) and the aforementioned statutory and constitutional provisions.

7.      Jurisdiction lies over state law claims based on the principles of supplemental jurisdiction, as codified at 28 U.S.C.§ 1367.

8.      The amount in controversy exclusive of interest and costs exceeds the sum of one hundred thousand Dollars ($100,000).

## VENUE

9.     All the claims herein arose within the jurisdiction of the United States District Court for the District of New Jersey and involve Defendants who reside within the jurisdictional limits. Venue is accordingly invoked pursuant to the dictates of 28 U.S.C. §1391(b) and (c).

## PARTIES

10.     Plaintiff Thomas Aiellos is a citizen of the State of New Jersey, residing therein at 67 Poplar Avenue, Hackensack, NJ 07601.

11.     Plaintiff Joseph Inglima is a citizen of the State of New Jersey, residing therein at 69 Island Terrace, Oakland, NJ 07436.

12.     Plaintiff Donald Pierce is a citizen of the State of New Jersey, residing therein at 231 Jefferson Avenue, River Edge, NJ 07661.

13.     Plaintiff Scott Sybel is a citizen of the State of New Jersey, residing therein at 795 Millbrook Road, River Edge, NJ 07661.

14.     Plaintiff Anthony Duardo is a citizen of the State of New Jersey, residing therein at 38 Moortachie Road, Unit 101, Hackensack, NJ 07601.

15.     Plaintiff Ralph Cavallo is a citizen of the State of New Jersey, residing therein at 151 Prospect Avenue, Suite 18A, Hackensack, NJ 07601

16.     Plaintiff Vincent Riotto is a citizen of the State of New Jersey, residing therein at 472 Jackson Avenue, 2nd Floor, Hackensack NJ 07601.

17. Defendant Chief Ken Zisa is, and was at all times material hereto, the Chief of Police of the Hackensack Police Department, located at 225 State Street, Hackensack, NJ 07601.

18. Defendant Joseph Zisa, Esquire is, and was at all times material hereto, the City Attorney for the City of Hackensack, located at 65 Central Avenue, Hackensack, NJ 07601.

19. Defendant Tomas Padilla is, and was at all times material hereto, an Officer with the Hackensack Police Department, located at 225 State Street, Hackensack, NJ 07601.

20. Defendant Officer Kevin Toomey is, and was at all times material hereto, an Officer with the Hackensack Police Department, located at 225 State Street, Hackensack, NJ 07601.

21. Defendant Sergeant Anthony Trezza, is, and was at all times material hereto, an Officer with the Hackensack Police Department, located at 225 State Street, Hackensack, NJ 07601.

22. Defendant Phillip Carroll is, and was at all times material hereto, an Officer with the Hackensack Police Department, located at 225 State Street, Hackensack, NJ 07601.

23. Defendant Captain Salcedo is, and was at all times material hereto, an Officer with the Hackensack Police Department, located at 225 State Street, Hackensack, NJ

07601.

24.   Defendant City of Hackensack is an incorporated municipality located in Bergen County, NJ, with municipal offices located at 65 Central Avenue, Hackensack, NJ 07601.

## THOMAS AIELLOS

25.   Thomas Aiellos was a police officer in the Hackensack Police Department from 1986 until 2009. He was forced to resign from the department in April 2007.

26.   During Plaintiff's career, Plaintiff has been threatened with retaliation if he did not support Zisa's candidacies for State Assembly and other elected offices.

27.   In 2007, Chief Zisa announced his candidacy for State Assembly.

28.   Toward that end, Chief Zisa had a fundraising dinner. Police Officers were requested to donate a minimum of $75.00 per ticket or otherwise be retaliated against.

29.   Plaintiff, who is a registered Republican, was requested to switch his registration along with his parent's and his wife's registrations in order to support the Chief.

30.   He was told to do this or he would be retaliated against if he did not switch parties and assist with respect to raising monies for the Chief's candidacy.

31.   Plaintiff was on the promotion list for Lieutenant when he was asked to switch parties or face retaliation. For fear of retaliation Plaintiff and his family switched their registrations from Republican to Democrat.

32. Moreover, one of the primary fundraisers for Chief Zisa was Officer Kevin Toomey. Toomey was in charge of fundraising for many of the Chief's candidacies or candidacies that the Chief supported.

33. Through Toomey, officers, including the Plaintiff, were required to "donate" monies for various campaigns and if they did not, they were informed by Toomey and other HPD Officers that they would be retaliated against.

34. In June of 2008, a Policemen's Benevolent Association (PBA) delegate election was held inside the locker room of the Hackensack Police Department (HPD).

35. The two candidates running for PBA delegate were Police Officer Joseph Inglima and Detective Tina Clouse.

36. Prior to the election, Chief Zisa made in openly known to all HPD officers that he desired Clouse to win the election and they must vote to Clouse to demonstrate their loyalty to him.

37. Zisa made it apparent that failure to vote for Clouse would result in direct retaliation in the workplace but not limited to undesirable positions, assignments that were considered disciplinary assignments, like foot patrol, or failure to promote others who were up for promotion on eligibility lists.

38. To achieve the election of Clouse, Zisa instructed Officer Cinque to wear a sign on his back that read "Vote for Clouse" prior to the election. The sign was observed by nearly all HPD members prior to voting.

39.  Zisa further instructed Sergeant Jamie Barrios to stand in front of the ballot box and demand that all officers show him the written votes. Barrios took note on a newspaper recording the names of those who would not show their vote.

40.  Anthony Trezza, Captain John Carroll and Phillip Carroll told numerous officers, including the Plaintiff, that if he did not vote for Clouse, he would be retaliated against.

41.  In April of 2008, Plaintiff was involved in an incident in the line of duty wherein Plaintiff was injured and needed surgery on his shin and leg. In June of 2008 there was a PBA election for state delegate.

42.  Prior to the 2008 state delegate election, Plaintiff made it openly known to his superiors and Zisa that he would not vote for Clouse and that he supported Inglima.

43.  Inglima ultimately won the PBA election.

44.  Plaintiff was promoted to Sergeant in or about 1993. In or about 2005, Plaintiff took a test for Lieutenant and in 2006, Plaintiff was on an eligibility list for Lieutenant. This list was in effect for three years ending in February of 2009. Plaintiff ultimately became number four on the list. Two Sergeants were immediately promoted to Lieutenant in or around 2006 and a third Sergeant was promoted in December of 2008. Furthermore, there was a vacancy for Plaintiff to be promoted prior to the list expiring in February of 2009.

45.   In direct retaliation for Plaintiff's political affiliation, Plaintiff was ordered, in August 2008, back to work although he was not capable to perform his duties as a police officer because of his injury as well as he was not authorized to carry a weapon.

46.   Plaintiff took personal leave time to attend to his father who was critically ill and assisted his mother who suffered from dementia.

47.   Plaintiff in December of 2008 planned to retire due to the previous retaliation and to take care of his ailing parents.  Furthermore, Plaintiff had not been promoted to Lieutenant although there was a vacancy on the list.

48.   On December 29, 2008, Plaintiff's father died, and as a result, Plaintiff decided not to retire since he no longer needed to attend to his father's illness.

49.   Plaintiff withdrew any retirement papers that had been submitted.

50.   In January of 2009, Pete Busciglio, who was next in line on the Lieutenant's list after the Plaintiff, approached the Plaintiff and stated to him that Chief Zisa had advised Busciglio that Plaintiff was not going to be promoted by the Chief, so Plaintiff should resign so that Busciglio and others behind the Plaintiff could be promoted.

51.   Plaintiff failed to succumb to Defendant Zisa's request to retire and failed to retire at this time.

52.   In February of 2009, Plaintiff had a meeting with Chief Zisa wherein the Chief

12

stated that if he did not retire, he was going to be charged for falsifying a
document related to his injuries as well as be assigned a walking the beat post,
which is a disciplinary position, which Plaintiff would not be able to tolerate due
to his injury.

53.    Said accusations were false and Plaintiff was being retaliated against for his failure
to support the aforementioned candidates and not retiring earlier.

54.    After these threats, Plaintiff was forced to retire against his will for fear of further
retaliation from the Chief and the Chief's failure to promote the Plaintiff.

55.    His retirement became effective April 1, 2009.

56.    Shortly after the Plaintiff retired, he attended a PBA meeting on April 22, 2009.

57.    One of the principal supporters of Chief Zisa, Defendant Toomey, assaulted the
Plaintiff by grabbing and hitting him on his neck and pushing the Plaintiff to cause
him to fall and suffer injuries.

58.    This assault and battery committed by Toomey were in direct retaliation of
Plaintiff not supporting Chief Zisa as set forth in this Complaint.

59.    Plaintiff filed a report with Internal Affairs which has not been properly
investigated.

**JOSEPH INGLIMA**

60.    Plaintiff adopts and incorporates the allegations in paragraphs 1-59 as though each
were individually stated herein at length.

61.    Officer Inglima has been an officer for the Hackensack Police Department since

January 1986.

62. At times material herein, Plaintiff Inglima ran for reelection for State Delegate of the PBA under the fear of retaliation from Defendant Zisa who has communicated through other police officers that Inglima would be retaliated against if he continued his candidacy and those who support him would be retaliated against if he continued his candidacy and won the election.

63. Zisa in using his office as Chief of Police, stated to numerous police officers and supervisory officers within the HPD that they should vote for Clouse and that if they supported Inglima they would be retaliated against.

64. Zisa did not want the Plaintiff to be reelected to State Delegate since Plaintiff did not support Defendant Chief Zisa or Defendant Captain Tomas Padilla, who was the County Freeholder, in previous fundraisers. Furthermore, Plaintiff was opposed to the use of any Union monies to pay for political functions that took place at The Crow's Nest in June 2007.

65. Previously, Plaintiff refused to donate any monies and not endorse the Chief for State Assembly or support Captain Tom Padilla for County Freeholder in 2005 and subsequent fundraiser for Padilla.

66. In 2007 Plaintiff was directed verbally by Toomey and other police officers to donate money to the Chief's campaign. The Plaintiff refused to donate any monies to this campaign.

67. In the beginning of 2008, Toomey drafted a letter for Plaintiff to sign, endorsing Zisa for State Assembly. Inglima refused to sign the letter since he was a State Delegate and did not want to endorse any candidates.

68. At all times material herein, Captain Padilla has been endorsed by Chief Zisa and has been financially supported by him through funds unlawfully obtained from the PBA and from Hackensack Police Department Officers.

69. During Padilla's campaign for Freeholder, he sought contributions from Plaintiff Inglima who failed to donate to his campaign.

70. As a result of Inglima's failure in the past to donate to the campaign of Defendant Captain Padilla for County Freeholder and Defendant Ken Zisa for State Assembly, Zisa opposed Plaintiff's candidacy for PBA State Delegate and wrongfully interfered with the election of the Plaintiff that took place in June of 2008.

71. Prior and subsequent to the election, Inglima was fearful of retaliation since a number of those police officers who supported him were directly retaliated against for supporting him in the election.

72. In direct retaliation for his political affiliation, and for supporting Inglima, Zisa demoted and reassigned numerous officers.

73. He demoted Officer Ferraioli to a walking post and this was considered a disciplinary assignment in August of 2008. At the time of that assignment,

15

Ferraioli had a serous foot injury, damage and bone chips which was known to Zisa.

74. Officer Aldrin Lamboy, in direct retaliation for his political affiliation and support of Inglima, was demoted by Zisa and reassigned from the motorcycle division to a walking post in July of 2008.

75. Officer Al Gutierrez who voted for Inglima was transferred on June 23, 2008 from Narcotics to Patrol.

76. This was a demotion since he lost detective's pay.

77. Officer Jennifer Finley, who supported Inglima, was transferred on June 23, 2008 to a patrol position from her detective slot.

78. Officer On July 7, 2008, Alessandra Viola was transferred from housing authority to patrol on the walking post.

79. This was a demotion in direct retaliation for her support of Inglima.

80. Although Plaintiff won the election and he serves in the position of State Delegate, he maintains that position in fear of retaliation after winning said election.

## DONALD PIERCE

81. Plaintiff adopts and incorporates the allegations in paragraphs 1-80 as though each were individually stated herein at length.

82. Plaintiff Pierce has been a police officer in Hackensack since January 6, 1986.

83. In March of 2003, Plaintiff was promoted to Lieutenant and became a Tour

Commander.

84. In 2007 he was transferred to the Traffic Division.

85. Plaintiff was forced, under threat of retaliation, to contribute monies for Chief Zisa, during his 2007 campaign for State Assembly and to contribute monies to Thomas Padilla, who was the County Freeholder and a member of the Hackensack Police Department. These contributions were made in 2007 and prior thereto.

86. Plaintiff was approached by Sergeant Trezza on behalf of Chief Zisa and Tomas Padilla to contribute additional monies on or about June 24, 2007 and Plaintiff refused to donate any more monies to Padilla and Zisa's candidacies.

87. In mid June 2008, a PBA state delegate election was to be held.

88. The two candidates running for PBA delegate were Police Officer Joseph Inglima ("Inglima") and Detective Tina Clouse ("Clouse").

89. Prior to the election, Chief Zisa made it openly known to all HPD officers that he desired Clouse to win the election, and that they must vote for Clouse to demonstrate their loyalty to him.

90. Chief Zisa, on June 4, 2008, prior to the election, personally stated to Plaintiff that he should support Tina Clouse for State Delegate; at that time Plaintiff stated he seconded the nomination of Inglima and would not support Clouse.

91. Zisa made it apparent that failure to vote for Clouse would result in direct retaliation in the workplace.

92. To achieve this end, Zisa instructed Captain Dennis Cinque ("Cinque") to wear on a sign on his back that read "Vote for Clouse," prior to the election.

93. This sign was observed by nearly all HPD members prior to voting.

94. Moreover, Zisa instructed Sergeant Jaime Barrios ("Barrios") to stand in front of the ballot box and demand that all officers show him their written votes.

95. Plaintiff was told in advance of the election that failing to show Barrios his vote was considered a "no vote" for Clouse, and disloyalty to Zisa.

96. Barrios took notes on a newspaper recording the names of those who would not show their vote.

97. Sergeant Anthony Trezza ("Trezza"), Captain John Carroll ("Carroll"), told numerous officers, including Plaintiff, that if he did not vote for Clouse, he would be transferred.

98. Trezza, Carroll, Patrol Officer Kevin Toomey, and others told Plaintiff that if he did not vote for Clouse, he would suffer adverse actions.

99. Plaintiff made it openly known to his superiors and Zisa that he would not vote for Clouse and that he supported Inglima.

100. Inglima ultimately won the PBA election.

101. Subsequent to the election, Plaintiff was fearful of retaliation since a number of those police officers who supported Inglima were retaliated against due to his support of him in the election.

18

102. For not supporting the Chief and Clouse, Plaintiff was retaliated against by statements made to him that he would not be promoted to Captain and he would be transferred from his position in the traffic division.

103. Rather than being transferred, in August 2009, Plaintiff will retire from his position in the Hackensack Police Department and he has submitted retirement papers toward that end.

## SCOTT SYBEL

104. Plaintiff adopts and incorporates the allegations in paragraphs 1-103 as though each were individually stated herein at length.

105. Plaintiff has been employed as a police officer in the Hackensack Police Department since January 13, 1992.

106. In 2003 Officer Art Mento along with the Plaintiff and his brother Doug Sybel entered into an agreement to build a house located at 137 Berry Street in the City of Hackensack.

107. In early 2004, officer Mento approached the Plaintiff and stated that if Defendant Ken Zisa did not receive a share of the proceeds from the sale of the house, Plaintiff's career would be over.

108. Plaintiff, against his will and in fear of retaliation of losing his career, permitted Defendant Ken Zisa to be part of the partnership.

109. On numerous occasions, Defendant Zisa abused his official position to coerce

Plaintiff to perform extensive labor and services for Defendant's own personal enrichment, under threat of retaliation and dismissal. Said services included but were not limited to building a deck at Defendant Chief Zisa's house, building a shed on his garage and replacing windows and doors at his house and other repairs at his house as well as Deputy Chief Frank Zisa's house and other ventures of the Defendant Chief Zisa.

110. Defendant Ken Zisa formed Cranberry Associates, LLC in 2004. Defendant Attorney Joseph Zisa, the City Attorney in the City of Hackensack and Defendant Ken Zisa's cousin, formed the Corporation. Plaintiff was to be a 20% shareholder.

111. In 2004 the Berry Street property was rented for approximately $3100 per month. Despite repeated demands for an accounting and a percentage of the rents, Plaintiff has never received any rental income or an accounting.

112. In 2005 the Berry Street property sold for approximately $450,000. Plaintiff and his brother were not permitted to participate in the settlement. Outside of the office where the settlement took place, Plaintiff was requested to sign the applicable settlement papers without receiving any copies and without an opportunity to adequately review the settlement documents. Furthermore, Joseph Zisa allegedly represented the Plaintiff at the closing and Plaintiff received $18,000 from the closing despite representations that he would receive his proportionate share from the sale of the property.

113. Additional properties were purchased in Paterson, NJ by Cranberry, LLC. These properties will be referred to herein as the Governor Street properties.

114. The lots were subdivided in April 2008. On three of the lots, houses were built. Those three properties were sold for approximately $850,000. Plaintiff, despite repeated demands to both Defendants, has not received any documentation or monies from the sale of these properties which were located on Governor Street.

115. Defendant Ken Zisa and Joseph Zisa used these monies for their own personal gain. Plaintiff has not received any accounting or proceeds from the sale of these properties and has been threatened with retaliation as a result of making requests for an accounting and his fair share of the proceeds.

116. In September 2007, Plaintiff Sybel was a Sergeant Detective assigned to the Narcotics Division.

117. In 2007, Chief Zisa announced his candidacy for State Assembly.

118. Toward that end, Chief Zisa had a fundraising dinner in June of 2007. Police Officers were requested to donate a minimum of $75.00 per ticket or otherwise be retaliated against.

119. In the summer of 2007, Plaintiff was approached by Captain Joe Carroll, the brother of Phillip Carroll, who is the president of Local 9 of the PBA, as to his lack of financial support of Defendant Chief Zisa.

120. As a result of Plaintiff's refusal to further financially support Defendant Chief

Zisa, Plaintiff was demoted from Detective status and transferred to Patrol.

121. In June of 2008, a Policemen Benevolent Association (PBA) delegate election was held inside the locker room of the Hackensack Police Department (HPD).

122. The two candidates running for PBA delegate were Police Officer Joseph Inglima and Detective Tina Clouse.

123. Prior to the election, Chief Zisa made in openly known to all HPD officers that he desired Clouse to win the election and they must vote to Clouse to demonstrate their loyalty to him.

124. Zisa made it apparent that failure to vote for Clouse would result in direct retaliation in the workplace but not limited to undesirable positions, assignments that were considered disciplinary assignments, like foot patrol, or failure to promote others who were up for promotion on eligibility lists.

125. To achieve the election of Clouse, Zisa instructed Cinque to wear a sign on his back that read "Vote for Clouse" prior to the election. The sign was observed by nearly all HPD members prior to voting.

126. Zisa further instructed Sergeant Jamie Barrios to stand in front of the ballot box and demand that all officers show him the written votes. Barrios took note on a newspaper recording the names of those who would not show their vote.

127. Anthony Trezza, Captain John Carroll and Phillip Carroll told numerous officers, including the Plaintiff, that if he did not vote for Clouse, he would be retaliated

22

against.

128.   In the past, Plaintiff has been threatened with retaliation if he did not support Zisa's candidacies for State Assembly and other officers.

129.   As a result of Plaintiff's support for Inglima and lack of financial support for the Chief and candidates supported by the Chief, and Plaintiff's demand for an accounting and monies from Cranberry, LLC, Plaintiff is continually harassed and threatened with retaliation and has been retaliated against by being demoted and forced to take a drug test for no legitimate reason and release medical information in violation of HIPAA and under the threat of retaliation.

## ANTHONY DUARDO

130.   Plaintiff hereby adopts and incorporates the allegations in paragraphs 1-129 as if each were individually set forth herein at length.

131.   Plaintiff Anthony Duardo has been a Police Officer with the Hackensack Police Department since January 2002.

132.   Plaintiff was assigned to Patrol until August of 2008.

133.   Plaintiff has been forced to donate monies to Defendant Chief Zisa's State Assembly candidacy in June of 2007 and to vote for Tina Clouse in the State PBA election in June of 2008.

134.   In June of 2007, Plaintiff was approached by Sergeant Trezza to donate $75.00 to Defendant Zisa's campaign for election for State Assembly.

135.   Plaintiff did not want to give monies to the Campaign since he was a "junior

23

officer" and fearful of retaliation and/or transfer to undesirable positions in the HPD, he donated said monies against his will.

136. In or about May and June of 2008, before the PBA elections for State Delegate, Plaintiff was once again approached by Sergeant Trezza and told to do the right thing for Defendant Chief Zisa and vote for Tina Clouse.

137. Out of fear of retaliation since the election was being monitored by Police Officers who were reporting the votes to Defendant Zisa, Plaintiff went to the locker room to cast his vote.

138. Plaintiff acknowledged to Barrios that he voted for Clouse and was rewarded by being transferred to Traffic, which is a better position than Patrol since it is more prestigious and is only day work.

139. Plaintiff was a witness to the assault by Officer Toomey on Plaintiff Aiellos on April 22, 2009.

140. At all times material herein, Officer Toomey is one of the main campaign fundraisers for Defendant Zisa and performs these duties at the direction of the Chief and while on duty.

141. Plaintiff prepared a report to Internal Affairs as to his observations, which was detrimental to Toomey and favorable to Aiellos.

142. On or about May 14, 2004, Plaintiff was requested to come to I.A. by Captain Salcedo.  At said interview he was induced to write a false report by Captain

24

Salcedo.

143. Plaintiff refused to write a different report.

144. As a result of not changing his report, Plaintiff was transferred to Patrol and is now being monitored by Defendant Chief Zisa and his supervisors at the direction of the Chief.  Furthermore, Plaintiff's work shift has changed so he is not on the same shift with his brother who is a Police Officer.  Plaintiff now works under fear of further retaliation.

## **RALPH CAVALLO**

143. Plaintiff adopts and incorporates the allegations in paragraphs 1-142 as though each were individually stated herein at length.

144. Plaintiff Ralph Cavallo has been employed by the HPD since 1994.

145. Plaintiff has been assigned to patrol and has been disciplined by being assigned to a walking post in a high crime area for his failure to support Defendant Zisa and other candidates supported by Defendant Zisa.

146. Plaintiff was requested by Sgt. Trezza at the direction of Defendant Zisa to attend a photo shoot for Defendant Zisa's candidacy for State Senate and/or State Assembly in March of 2007.

147. Plaintiff was unable to attend due to a previous commitment.

148. In direct retaliation for Plaintiff's failure to attend, Plaintiff was assigned a "walking post", which is a disciplinary position in a high crime area on Hudson

Street on April 13, 2007.

149.   Plaintiff was continually assigned "walking post" assignments and in order to be relieved from these assignments Plaintiff, against his will, financially contributed hundreds of dollars to Defendant Zisa and Defendant Padilla's campaigns for Assembly and Freeholder, respectively, so that his assignment could be changed. These political donation took place between April 2007 through October 2007.

150.   Despite these donations, Plaintiff was periodically assigned to the Targeted Area Patrol Squad (TAPS) at night. TAPS is a walking post in a high crime area and is also a disciplinary position.

151.   On June 2, 2008, Plaintiff was approached by Detective Sergeant Aletta, who stated that he was sent by Defendant Zisa to tell the Plaintiff to vote for Tina Clouse and it would help to relieve Plaintiff from his Housing/TAPS assignment.

152.   Plaintiff stated on June 4, 2008 that he would vote for Clouse and that he was advised that he was to show his vote to Detective Sergeant Barrios.

153.   Plaintiff represented that he voted for Clouse at the election on June 6, 2008 and shortly thereafter was assigned to a more favorable position in Patrol

154.   Plaintiff, subsequent to his transfer back to patrol, has once again been targeted by Defendant Zisa for walking assignments and Plaintiff has been forced against his will, so that he can be relieved of these assignments unless he continually donates monies to Defendant Zisa's political campaigns and to candidates he supports.

26

### VINCENT RIOTTO

155.  Plaintiff adopts and incorporates the allegations in paragraphs 1-154 as though each were individually stated herein at length.

156.  Lieutenant Vincent Riotto ("Riotto") has been employed by the HPD from August 2, 1993 to the present.

157.  Riotto is a Patrol Lieutenant and Tour Commander.  Presently he is suspended.

158.  Throughout his career, Plaintiff has been requested to donate monies to Defendant chief Zisa for his various candidacies and candidates he supports.  These campaign contributions have been made against Plaintiff's will and made in fear of retaliation.

159.  In June of 2007, Plaintiff was requested to contribute monies to Defendant Chief Zisa's candidacy for State Assembly.  This was the last time that Plaintiff contributed any funds to Zisa although he has been requested to do so since that time.

160.  Defendant Trezza is one of Defendant's most trusted officers who the Chief delegates to solicit monies for the Chief.  At said time Trezza requested on behalf of the Chief that Plaintiff contribute additional monies to the campaign.

161.  In October of 2008 Plaintiff was requested by Sergeant Trezza to contribute to a beefsteak dinner for Captain Padilla for his reelection to the Board of County

Freeholders.

162.   Plaintiff failed to contribute additional monies to this campaign fundraiser.

163.   Prior to the PBA election for State Delegate, Plaintiff was approached by Captain
       Garcia, Sergeant Trezza, Sergeant Barrios and Lieutenant Heinemann and told that
       Defendant Chief Zisa wanted Plaintiff to vote for Clouse.

164.   Plaintiff represented that he would vote for Clouse out of fear of retaliation by
       Defendant Zisa.

165.   On April 6, 2009, Riotto sent a certified letter to Defendant Chief Zisa.

166.   The letter was received by Zisa on April 7, 2009.

167.   In his letter, Riotto disclosed his conversation with Sgt. Trezza, wherein Trezza
       told him that he would put a bullet in Officer Anthony Ferraioli's head and then in
       his own head if Ferraioli won the upcoming May 2009 PBA election.

168.   Ferraioli was at that time a candidate for PBA President, who Plaintiff supported,
       and who was going to run against the current President Phillip Carroll who Chief
       Zisa supported so he could control the Union.

169.   Riotto also stated how much Zisa hated Ferraioli and how he would eat a coffee
       cup before Zisa would make Ferraioli a Sergeant.

170.   Riotto explained that this threat caused him serious concern for Ferraioli's safety.

171.   Riotto also stated in his letter, "I can understand why Ferraioli would be upset that
       you would use your position to stop him from advancing his career because of your

28

personal feelings for him. This happens all the time in our Department, and I have always though it was wrong". Furthermore, Plaintiff was concerned that he may be retaliated against in reporting this activity.

172. Moreover, in Riotto's letter he disclosed that Trezza told him that Captain Thomas Salcedo and maybe Captain Daniel Garcia were not Hackensack residents when they applied for a position within the Hackensack Police Department.

173. Riotto stated, "Trezza told me that Padilla was renting a place from him that was in Hackensack in mid 1990. Salcedo used Padilla's Hackensack address to apply to be a cop even though Salcedo lived in Rochelle Park at the time. If Trezza was being truthful, then Salcedo took a position that is paid by the tax payers from Hackensack from a proper Hackensack resident. This is fraud."

174. Two days later, at 8:30 a.m. on April 9, 2009, Riotto received a call from Deputy Chief Koeser. Koeser told him to report to headquarters right away for questioning. Outside of Riotto's house was a black HPD vehicle waiting for him.

175. Riotto told Koeser that he had an important doctor's appointment at 10:15 a.m. and that he could not go to headquarters until the afternoon.

176. Koeser refused Riotto's request and insisted that he be at headquarters no later than 10:30 a.m. and that he cancel his doctor's appointment.

177. Koeser's demand was clear that Riotto had no choice but to come in for immediate questioning.

178. At headquarters Riotto was taken to an interrogation room and questioned by Lt. John Heinemann, which may have been videotaped or recorded. During questioning Riotto explained exactly what Trezza disclosed to him, which he memorialized in his letter to Defendant Chief Zisa.

179. During Heinemann's interrogation, Riotto began to feel his blood pressure elevate.

180. Riotto told Lt. Heinemann that his anxiety and blood pressure were going through the roof. He told Heinemann that he wanted to leave the station and go to the doctor immediately.

181. Heinemann told Riotto that he was not free to leave.

182. After repeated requests, Heinemann told Riotto he could go to the doctor only if he was escorted by two police officers.

183. Riotto then asked Heinemann whether he was under arrest at that point, which Heinemann denied.

184. Riotto also repeatedly asked for oxygen.

185. Heinemann told him there was no oxygen in the station and continued to ask him more questions.

186. Riotto was taken from the station by ambulance and transported to Hackensack Hospital.

187. Notably, before being transported, Heinemann told Riotto he was ordered to come back to headquarters as soon as he was released from the hospital.

188.   At the hospital, doctors told Riotto that his blood pressure was over 200/98, and that he would have suffered a stroke if his blood pressure stayed at that level any longer.

189.   Riotto was ordered three days bed rest by doctors.

190.   At 10:48 p.m. that same evening, Riotto memorialized these events in an email to Zisa.

191.   Zisa took no action.

192.   On April 15, 2009, Riotto was required to appear for a second Internal Affairs investigation.

193.   Riotto was taken to the same interrogation room for questioning.  Present at the interrogation were Heinemann and Salcedo.

194.   Salcedo is also the subject of Riotto's April 6, 2009 complaint to Zisa concerning the improper residence issue.

195.   Despite objections, Salcedo remained present during Heinemann's questioning and asked several questions himself.

196.   The investigation of Riotto was biased since a major component of Plaintiff's written complaint concerns illegal activity by Salcedo.

197.   On April 20, 2009, Riotto presented to Dr. Shievella for a mandatory fitness for duty psychological evaluation

198.   Riotto was not given any reason for this order.

31

199.  The results of the evaluation have not been disclosed to Riotto as of the filing of this Complaint.

200.  On April 23, 2009, Riotto presented to headquarters for a third I.A. interview/interrogation.  This investigation was ordered by Salcedo.

201.  This time the interview was conducted solely by Salcedo.

202.  Plaintiff has been continually harassed by Zisa and Salcedo.  Most recently, he has been ordered to take a drug test for no legitimate reason and to release medical information in violation of HIPAA and under threat of discipline.

203.  On May 14, 2009, Riotto was advised by Zisa that he was suspended for 30 days pending a hearing.

204.  Riotto received approximately 62 charges issued by Zisa on May 14, 2009.

205.  Defendants have not taken action against Trezza or confiscated his weapon.

206.  Trezza has not been ordered for a psychological evaluation.

207.  All of the disciplinary charges initiated against the Plaintiff were in retaliation for Plaintiff not financially supporting the Chief, Padilla and candidates that they supported for the PBA and elected offices and not supporting them financially as well as Plaintiff speaking out on matters of a public concern involving the HPD and supporting Ferraioli for PBA President.

**PBA LOCAL 9**

208.  Plaintiffs adopt and incorporate the allegations in paragraphs 1-207 as though each were individually stated herein at length.

32

209. Plaintiffs were all members of PBA local 9.

210. At all times material herein Phillip Carroll has been the President of Local 9 of the PBA.

211. Plaintiffs all contribute monthly dues to the PBA.

212. Unknown to Plaintiffs and without their consent, monies from the Union were authorized by Defendant Carroll to be used to fund various campaign and fundraisers for Defendants Zisa and Padilla.

213. On or about October 9, 2005, the Union contributed 650.00 for Padilla and his candidacy for County Freeholder.

214. On February 15, 2006 the Union contributed $1000 to Defendant Chief Zisa for his candidacy for State Senate.

215. On March 27, 2007 the Union contributed $1050 to Defendant Padilla's future campaign for County Freeholder.

216. On June 22, 2007 the Union paid $688 to the Crow's Nest for a fundraiser for Defendant Zisa's candidacy for State Assembly.

217. On October 16, 2008 the Union Paid $1050 to Padilla for future elections related to his County Freeholder's Office.

218. Plaintiffs have never been provided with an accounting of said union funds.

219. Defendants Zisa, Padilla and Carroll have wrongfully misused and misappropriated Union dues for their own political and personal gain.

## COUNT I
**ALL PLAINTIFFS V. KEN ZISA, ANTHONY TREZZA, Phillip CARROLL,
KEVIN TOOMEY AND TOMAS PADILLA
42 U.S.C. § 1983
FIRST AMENDMENT VIOLATIONS**

220.    Plaintiffs adopt and incorporate the allegations in paragraphs 1-219as though each
were individually stated herein at length.

221.    Defendants violated the provisions of 42 U.S.C. § 1983 in that Defendants, acting
under color of state law, deprived Plaintiffs of the privileges and immunities
secured to them by the First and Fourteenth Amendments of the United States
Constitution and, in particular, their right to hold employment without
infringement of their First Amendment right to freedom of speech and association.

222.    Defendant Zisa willfully and recklessly transferred, demoted, disciplined and
threatened Plaintiffs with discipline, and failed to promote Plaintiff Aiellos, in
order to deny Plaintiffs their First Amendment right to free speech and association.

223.    Defendants' actions were to penalize and retaliate against Plaintiffs for their
exercise of fundamental First Amendment rights.

WHEREFORE, Plaintiffs respectfully request this Honorable Court:

    i.      Enter a declaratory judgment that Defendants' retaliatory acts complained
of herein have violated and continue to violate the rights of Plaintiff as
secured by the United States Constitution;

    ii.     Enjoin Defendants from continuing said retaliatory practices;

34

    iii.    Award Plaintiffs compensatory damages including but not limited to: pain,

suffering, past economic loss, future economic loss, back pay, front pay,

wage increases, loss of life's pleasures, loss of reputation, benefits,

emotional distress and other damages;

    iv.    Award reasonable costs and attorney's fees;

    v.    Award punitive damages;

    vi.    Grant any other relief this Court deems just and proper under the

circumstances.

**COUNT II**
**ALL PLAINTIFFS V. DEFENDANT KEN ZISA**
**VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT**
**ORGANIZATIONS ACT, 18 U.S.C. § 1962(b) - EXTORTION**

224.    Plaintiffs adopt and incorporate the allegations in the preceding paragraphs as

though each were individually stated herein at length.

225.    The actions of Defendant Zisa violates the Racketeer Influenced and Corrupt

Organizations Act (RICO), 18 U.S.C.§ 1962(b).

226.    At all relevant times, Defendants were persons within the meaning of 18 U.S.C. §

1961(3).

**ENTERPRISES AND RACKETEERING ACTIVITIES**

227.    Defendant Ken Zisa has acted through various enterprises to illegally influence

elections by means of extortion in violation of the Hobbs Act, 18 U.S.C. § 1951,

35

and state law.

228. Specifically, Defendant Zisa used the office of Chief of Police of Hackensack,
New Jersey to improperly influence public elections and PBA elections by
extorting monies from Plaintiff Police Officers with threats of retaliation,
retaliation, transfer to less desirable positions, demotions, promotions and
withholding of promotions and by the retaliation described herein and by using the
retaliatory conduct against the Plaintiff Police Officers and other Police Officers as
an example so other Officers would contribute monies to political fundraisers of
the Defendant and those he supported, out of fear of retaliation.

229. Defendant Zisa's acts affected interstate commerce.

230. The Office of the Chief of Police was maintained as part of a scheme to extort
monies from Plaintiff Police Officers to support Zisa's candidacies and others he
supported financially through illegal campaign contributions obtained from
Plaintiff Police Officers to influence County, State and union elections.

231. Defendant Chief Zisa further used Union dues unlawfully obtained to support his
candidacies and the candidacies of others.

232. These acts by Defendant Chief Zisa violated County, State and union elections
laws and were undertaken to ensure his continued control and manipulation of the
Hackensack Police Department as well as public and union elections.

233. Defendant Chief Zisa used his position to damage all plaintiffs by extorting monies

from all plaintiffs in that they contributed to fundraisers as well as failing to

promote Plaintiff Aiellos and instituting unlawful disciplinary proceedings or

threats of unlawful disciplinary proceedings against Plaintiffs Riotto, Aiellos and

Sybel, which caused Aiellos retirement and Riotto and Sybel to obtain attorneys

and to suffer loss of wages and/or monies due to them. The acts described herein

were carried out with the express intent of financial gain for Defendants and at the

expense of all plaintiffs.

234.   For example, Tom Aiellos was not promoted from Sergeant to Lieutenant for

failure to donate to Zisa's campaign for State Assembly and support Tina Clouse

for PBA State Delegate.  Defendant Zisa instituted false disciplinary charges

against Riotto which caused him to retain and attorney.  All plaintiffs were coerced

to contribute money to Zisa or to candidates he supported.

235.   All Plaintiffs were forced to give contributions and all gave contributions at one

time or another but when they did not were retaliated against or were threatened

with retaliation as set forth above in Counts I through IX in the HPD and influence

public and union election so Defendant could further control the HPD as well as

improperly fund and influence Union, County and State elections and for

Defendant's own financial gain.

236.   Defendants exhibited a pattern of racketeering involving more than two predicate

acts.

## PATTERN

237.   Defendant Chief Zisa's pattern of racketeering includes but is not limited to repeatedly, over a period of years, extorting monies from Plaintiff Police Officers by retaliation and threats of retaliation related to Plaintiff's positions within the Hackensack Police Department, against their expressed wishes, for his own pecuniary gain and political power

238.   Defendant Zisa has used and continues to use similar methods of obtaining/soliciting campaign contributions from Plaintiff police officers and other police officers.

239.   Said activities by Defendant constitute a pattern of racketeering activity as defined by 18 U.S.C. § 1962(b).

240.   The actions of Defendant, through his various enterprises, affect interstate commerce.

241.   Defendant still continues to employ similar illegal tactics and extortions of monies from police officers.

242.   The actions of Defendant directly damaged all plaintiffs and their property through his racketeering conduct.

WHEREFORE, Plaintiffs respectfully request this Honorable Court:

     i.   Enter a declaratory judgment that Defendants' acts complained of herein have violated and continue to violate the rights of Plaintiff as secured by the

United States Constitution;

ii.    Enjoin Defendants from continuing said practices;

iii.    Award Plaintiff compensatory damages including but not limited to: pain,

suffering, past economic loss, future economic loss, back pay, front pay,

wage increases, loss of life's pleasures, loss of reputation, benefits,

emotional distress and other damages;

iv.    Award treble damages

v.    Award reasonable costs and attorney's fees;

vi.    Award punitive damages;

vii.    Grant any other relief this Court deems just and proper under the

circumstances.

**COUNT III**
**SCOTT SYBEL V. KEN ZISA AND JOSEPH ZISA**
**VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT**
**ORGANIZATIONS ACT, 18 U.S.C. § 1962(b)**

243.    Plaintiff adopts and incorporates the allegations in paragraphs 1-242 as though

each were individually stated herein at length.

244.    The actions of Defendant Zisa and Defendant Joseph Zisa violate the Racketeer

Influenced and Corrupt Organizations Act (RICO), 18 U.S.C.§ 1962(b).

245.    At all relevant times, Defendants were persons within the meaning of 18 U.S.C. §

1961(3).

39

## ENTERPRISES AND RACKETEERING ACTIVITIES

246.   Defendant Ken Zisa has acted through various enterprises to illegally obtain
       money and services by means of extortion in violation of federal and state law.

247.   Specifically, Defendant Zisa, with the aid of his cousin, Hackensack City Attorney
       Joseph Zisa,  used the office of Chief of Police of Hackensack, New Jersey to
       threaten the plaintiff with the loss of his career as a police officer if he did not
       allow Defendant to become a partner in the development and sale of properties in
       Hackensack and Paterson, New Jersey.  As part of that scheme, Defendants
       exercised control of Plaintiff's off-duty business and denied the plaintiff monies
       and an accounting that was due to him.

248.   Furthermore, Defendant Zisa continually throughout Plaintiff's career sought labor
       and services as previously set forth in paragraph 109 of this Complaint, under
       threat of retaliation of the loss of Plaintiff's career as a police officer.

249.   Defendant Chief Zisa used his position to damage Plaintiff by extorting labor and
       services from Plaintiff in that he contributed free labor and services to Defendant
       under threat of retaliation in the form of the loss of Plaintiff's career. The acts
       described herein were carried out with the express intent of financial gain and at
       the expense of Plaintiff.

250.   Defendants exhibited a pattern of racketeering involving more than two predicate
       acts.

## PATTERN

251. Defendant Chief Zisa's pattern of racketeering includes but is not limited to repeatedly, over a period of years, extorting labor and services from Plaintiff by retaliation and threats of retaliation related to Plaintiff's positions within the Hackensack Police Department, against their expressed wishes, for his own pecuniary gain.

252. These acts by Defendant Ken Zisa with the aid of his cousin, Defendant Joseph Zisa, the City Attorney, were undertaken to insure his continued control and manipulation of the HPD as well as to have the Plaintiff perform services for the financial gain of both Defendants without Plaintiff receiving monies for said services in violation of federal and state law.

253. Said activities by Defendant constitute a pattern of racketeering activity as defined by 18 U.S.C. § 1962(b).

254. The actions of Defendant, through his various enterprises, affect interstate commerce.

255. The actions of Defendant directly damaged Plaintiffs and his property through his racketeering conduct.

WHEREFORE, Plaintiffs respectfully request this Honorable Court:

    i.    Enter a declaratory judgment that Defendants' acts complained of herein have violated and continue to violate the rights of Plaintiff as secured by the

United States Constitution;

ii.    Enjoin Defendants from continuing said practices;

iii.    Award Plaintiff compensatory damages including but not limited to: pain, suffering, past economic loss, future economic loss, back pay, front pay, wage increases, loss of life's pleasures, loss of reputation, benefits, emotional distress and other damages;

iv.    Award treble damages;

v.    Award reasonable costs and attorney's fees;

vi.    Award punitive damages;

vii.    Grant any other relief this Court deems just and proper under the circumstances.

## COUNT IV
## ALL PLAINTIFFS V. ALL DEFENDANTS
## VIOLATION OF 42 U.S.C. § 1985
## CONSPIRACY

256.    Plaintiffs adopt and incorporate the allegations in paragraphs 1-255 as though each were individually stated herein at length.

257.    Defendants conspired to violate Plaintiff's constitutional rights as set forth in the United States Constitution by denying her the rights and protections conveyed by the Constitution to include but not be limited to freedom of speech and freedom to vote, in violation of 42 U.S.C. § 1985.

42

258.   Further, Plaintiffs have been required to retain an attorney to assist Plaintiffs in asserting Plaintiffs' claims and protecting Plaintiffs' rights.

WHEREFORE, Plaintiffs respectfully request this Honorable Court:

     i.     Enter a declaratory judgment that Defendants' retaliatory acts complained of herein have violated and continue to violate the rights of Plaintiff as secured by the United States Constitution;

     ii.     Enjoin Defendants from continuing its retaliatory practices;

     iii.     Award Plaintiff compensatory damages including but not limited to: pain, suffering, past economic loss, future economic loss, back pay, front pay, wage increases, loss of life's pleasures, loss of reputation, benefits, emotional distress and other damages;

     iv.     Award reasonable costs and attorney's fees;

     v.     Award punitive damages;

     vi.     Grant any other relief this Court deems just and proper under the circumstances.

### COUNT V
### ALL PLAINTIFFS V. CITY OF HACKENSACK
### VIOLATION OF 42 U.S.C. §1983

259.   Plaintiffs adopt and incorporate the allegations in paragraphs 1-258 as though each were individually stated herein at length.

260.   Defendant City of Hackensack developed and maintained a number of deficient

policies and/or customs which caused the deprivation of Plaintiff's constitutional rights.

261. Defendant City of Hackensack's policies and customs encouraged Defendant Zisa to believe that he could violate the constitutional rights of Plaintiffs with impunity and with the explicit or tacit approval of the Defendant City of Hackensack.

WHEREFORE, Plaintiffs respectfully request this Honorable Court:

i.    Enter a declaratory judgment that Defendant's acts complained of herein have violated and continue to violate the rights of Plaintiffs as secured by the United States Constitution;

ii.   Enjoin Defendant from continuing said practices;

iii.  Award Plaintiffs compensatory damages including but not limited to: pain, suffering, past economic loss, future economic loss, back pay, front pay, wage increases, loss of life's pleasures, loss of reputation, benefits, emotional distress and other damages;

iv.   Award reasonable costs and attorney's fees;

v.    Award punitive damages;

vi.   Grant any other relief this Court deems just and proper under the circumstances.

## COUNT VI
## SCOTT SYBEL V. DEFENDANT KEN ZISA AND JOSEPH ZISA
## VIOLATION OF N.J.S.A. 2C:41-2 et seq.

262.  Plaintiff adopts and incorporates the allegations in paragraphs 1-261 as though each
were individually stated herein at length.

263.  Defendant Ken Zisa has acted through various enterprises to illegally obtain
money and services by means of extortion in violation of federal and state law.

264.  Specifically, Defendant Zisa, with the aid of his cousin, Hackensack City Attorney
Joseph Zisa,  used the office of Chief of Police of Hackensack, New Jersey to
threaten the plaintiff with the loss of his career as a police officer if he did not
allow Defendant to become a partner in the development and sale of properties in
Hackensack and Paterson, New Jersey.  As part of that scheme, Defendants
exercised control of Plaintiff's off-duty business and denied the plaintiff monies
and an accounting that was due to him.

265.  Furthermore, Defendant Zisa continually throughout Plaintiff's career sought labor
and services as previously set forth in paragraph 106 of this Complaint, under
threat of retaliation of the loss of Plaintiff's career as a police officer.

266.  Defendant Chief Zisa used his position to damage Plaintiff by extorting labor and
services from Plaintiff in that he contributed free labor and services to Defendant
under threat of retaliation in the form of the loss of Plaintiff's career. The acts
described herein were carried out with the express intent of financial gain and at

the expense of Plaintiff.

267.   The above actions violate N.J.S.A. 2C:41-2, the New Jersey Civil RICO statute.

WHEREFORE, Plaintiffs respectfully request this Honorable Court:

   i.   Enter a declaratory judgment that Defendant's acts complained of herein

        have violated and continue to violate the rights of Plaintiffs as secured by

        the laws of the State of New Jersey;

   ii.  Enjoin Defendant from continuing said practices;

   iii. Award Plaintiffs compensatory damages including but not limited to: pain,

        suffering, past economic loss, future economic loss, back pay, front pay,

        wage increases, loss of life's pleasures, loss of reputation, benefits,

        emotional distress and other damages;

   iv.  Award treble damages;

   v.   Award reasonable costs and attorney's fees;

   vi.  Award punitive damages;

   vii. Grant any other relief this Court deems just and proper under the

        circumstances.

## COUNT VII
## ALL PLAINTIFFS V. DEFENDANT KEN ZISA
## VIOLATION OF N.J.S.A. 2C:41-2 et seq.

268.   Plaintiffs adopt and incorporate the allegations in paragraphs 1-267 as though each

       were individually stated herein at length.

269.   The above actions violate N.J.S.A. 2C:41-2, the New Jersey Civil RICO statute.

WHEREFORE, Plaintiffs respectfully request this Honorable Court:

    i.      Enter a declaratory judgment that Defendant's acts complained of herein have violated and continue to violate the rights of Plaintiffs as secured by the laws of the State of New Jersey;

    ii.     Enjoin Defendant from continuing said practices;

    iii.    Award Plaintiffs compensatory damages including but not limited to: pain, suffering, past economic loss, future economic loss, back pay, front pay, wage increases, loss of life's pleasures, loss of reputation, benefits, emotional distress and other damages;

    iv.    Award treble damages;

    v.     Award reasonable costs and attorney's fees;

    vi.    Award punitive damages;

    vii.   Grant any other relief this Court deems just and proper under the circumstances.

## COUNT VIII
## THOMAS AIELLOS V. OFFICER KEVIN TOOMEY
## ASSAULT AND BATTERY

270.   Plaintiff adopts and incorporates the allegations in paragraphs 1-269 as though each were individually stated herein at length.

271.   Defendant willfully, intentionally and maliciously inflicted assaults and battery

upon Plaintiff, causing him the bodily injury and damages aforesaid

272. Plaintiff filed a Tort Claims Notice on June 19, 2009.

273. As a result of the aforementioned occurrence, and due to the intentional and willful acts of Defendant, Plaintiff has, and will in the future, suffer severe bodily injury, pain, emotional distress, humiliation, embarrassment, inconvenience, loss of pleasure and enjoyment of life, lost wages, lost wage earning capacity, past and future medical, surgical, hospitalization, nursing and rehabilitation expenses; and physical restrictions and impairments.

WHEREFORE, Plaintiffs respectfully request this Honorable Court:

i.   Enter a declaratory judgment that Defendant's acts complained of herein have violated the rights of Plaintiff;

ii.   Award Plaintiff compensatory damages including but not limited to: pain, suffering, past economic loss, future economic loss, back pay, front pay, wage increases, loss of life's pleasures, loss of reputation, benefits, emotional distress and other damages;

iii.   Award reasonable costs and attorney's fees;

iv.   Award punitive damages;

v.   Grant any other relief this Court deems just and proper under the circumstances.

48

## COUNT IX
## PLAINTIFF RIOTTO V. DEFENDANTS KEN ZISA AND SALCEDO
## VIOLATION OF CEPA N.J.S.A. 34:19

274. Plaintiff adopts and incorporates the allegations in the preceding paragraphs 1-272 as though each were individually stated herein at length.

275. Plaintiff spoke out against and reported misconduct by officers of the HPD.

276. Defendants retaliated against Plaintiff directly therefore.

277. Defendants' actions violate the Conscientious Employee Protection Act, N.J.S.A. 34:19.

278. As a direct and proximate result of Defendants' actions, Plaintiff has, and will in the future, suffer pain, emotional distress, humiliation, embarrassment, inconvenience, loss of pleasure and enjoyment of life, loss of reputation, lost wages, lost wage earning capacity, loss of benefits and past and future medical expenses.

WHEREFORE, Plaintiff respectfully requests this Honorable Court:

    i.      Enter a declaratory judgment that Defendants' acts complained of herein have violated and continue to violate the rights of Plaintiffs as secured by the laws of the State of New Jersey;

    ii.      Enjoin Defendants from continuing said practices;

    iii.      Award Plaintiff compensatory damages including but not limited to: pain, suffering, past economic loss, future economic loss, back pay, front pay,

wage increases, loss of life's pleasures, loss of reputation, benefits,

emotional distress and other damages;

iv.    Award reasonable costs and attorney's fees;

v.    Award punitive damages;

vi.    Grant any other relief this Court deems just and proper under the

circumstances.

## COUNT X
## PLAINTIFF SCOTT SYBEL V. DEFENDANTS CHIEF KEN ZISA AND JOSEPH ZISA, ESQUIRE
## BREACH OF FIDUCIARY RELATIONSHIP

279.    Plaintiffs adopt and incorporate the allegations in paragraphs 1-277 as though each

were individually stated herein at length.

280.    Plaintiff has been employed as a police officer in the Hackensack Police

Department since January 13, 1992.

281.    In 2003 Officer Art Mento along with the Plaintiff and his brother Doug Sybel

entered into an agreement to build a house located at 137 Berry Street in the City

of Hackensack.

282.    In early 2004, officer Mento approached the Plaintiff and stated that if Defendant

Ken Zisa did not receive a share of the proceeds from the sale of the house,

Plaintiff's career would be over.

283.    On numerous occasions, Defendant Zisa abused his official position to coerce

Plaintiff to perform extensive labor and services for Defendant's own personal enrichment, under threat of retaliation and dismissal. Said services included but were not limited to building a deck at Defendant Chief Zisa's house, building a shed on his garage and replacing windows and doors at his house and other repairs at his house as well as Deputy Chief Frank Zisa's house and other ventures of the Defendant Chief Zisa.

284. Plaintiff, against his will and in fear of retaliation of losing his career, permitted Defendant Ken Zisa to be part of the partnership.

285. Defendant Ken Zisa formed Cranberry Associates, LLC in 2004. Attorney Joseph Zisa, the City Attorney in the City of Hackensack and Defendant Ken Zisa's cousin, formed the Corporation. Plaintiff was to be a 20% shareholder.

286. In 2004 the Berry Street property was rented for approximately $3100 per month. Despite repeated demands for an accounting and a percentage of the rents, Plaintiff has never received any rental income or an accounting.

287. In 2005 the Berry Street property sold for approximately $450,000. Plaintiff and his brother were not permitted to participate in the settlement. Outside of the office where the settlement took place, Plaintiff was requested to sign the applicable settlement papers without receiving any copies and without an opportunity to adequately review the settlement documents. Furthermore, Joseph Zisa allegedly represented the Plaintiff at the closing and Plaintiff received

$18,000 from the closing despite representations that he would receive his proportionate share from the sale of the property.

288.  Additional properties were purchased in Paterson, NJ by Cranberry, LLC. These properties will be referred to herein as the Governor Street properties.

289.  The lots were subdivided in April 2008. On three of the lots, houses were built. Those three properties were sold for approximately $850,000. Plaintiff, despite repeated demands to both Defendants, has not received any documentation or monies from the sale of these properties which were located on Governor Street.

290.  Defendant Ken Zisa and Joseph Zisa, under the threat of retaliation against Plaintiff, used these monies for their own personal gain. Plaintiff has not received any accounting or proceeds from the sale of these properties.

291.  Defendants owed Plaintiff a fiduciary duty to provide an accounting of all profits and expenses and a proportionate share of all profits earned by Cranberry LLC.

292.  Defendants breached their fiduciary duty to Plaintiff by reason of the facts aforesaid.

293.  As a result of the actions of Defendants, Plaintiff is due and owing monies from the sale of said properties and rental income, the amount of which is not known at this time because Defendants have provided no accounting of same.

294.  Defendants misappropriated monies due and owing to Plaintiff and breached their fiduciary duty and their agreement with Plaintiff.

52

295.   Plaintiff filed a Tort Claim Notice on May 12, 2009.

WHEREFORE, Plaintiff respectfully requests this Honorable Court:

i.   Enter a declaratory judgment that Defendants' acts complained of herein have violated and continue to violate the rights of Plaintiff and that Plaintiff is due a proportionate share of all profits earned by Cranberry LLC;

ii.   Enjoin Defendants from continuing said practices;

iii.   Compel a full accounting of monies used by Defendants to purchase properties, Defendants' expenses and all monies received as a result of the sale and rental of properties;

iv.   Award Plaintiff compensatory damages including but not limited to: pain, suffering, past economic loss, future economic loss, back pay, front pay, wage increases, loss of life's pleasures, loss of reputation, benefits, emotional distress and other damages;

v.   Award reasonable costs and attorney's fees;

vi.   Award punitive damages; and

vii.   Grant any other relief this Court deems just and proper under the circumstances.

## COUNT XI
## PLAINTIFF SCOTT SYBEL V. DEFENDANTS CHIEF KEN ZISA AND JOSEPH ZISA, ESQUIRE
## BREACH OF CONTRACT

296.   Plaintiffs adopt and incorporate the allegations in paragraphs 1-293 as though each

were individually stated herein at length.

297.  Defendants breached the contract by failing to provide Plaintiff with an accounting

of all profits and expenses and a proportionate share of all profits earned by

Cranberry LLC.

298.  Plaintiff filed a Tort Claim Notice on May 12, 2009.

WHEREFORE, Plaintiff respectfully requests this Honorable Court:

    i.      Enter a declaratory judgment that Defendants' acts complained of herein

have violated and continue to violate the rights of Plaintiff and that Plaintiff

is due a proportionate share of all profits earned by Cranberry LLC;

    ii.     Enjoin Defendants from continuing said practices;

    iii.    Compel a full accounting of monies used by Defendants to purchase

properties, Defendants' expenses and all monies received as a result of the

sale and rental of properties;

    iv.    Award Plaintiff compensatory damages including but not limited to: pain,

suffering, past economic loss, future economic loss, back pay, front pay,

wage increases, loss of life's pleasures, loss of reputation, benefits,

emotional distress and other damages;

    v.      Award reasonable costs and attorney's fees;

    vi.     Award punitive damages; and

    vii.   Grant any other relief this Court deems just and proper under the

circumstances.

RECEIVED-CLERK
U.S. DISTRICT COURT

2009 JUN 24  A 10: 15

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

**JOHN J. ZIDZIUNAS, ESQUIRE**
**THE LAW OFFICES OF JOHN J. ZIDZIUNAS**

**MARK B. FROST, ESQUIRE**
**MARK B. FROST & ASSOCIATES**

Dated:   June 24, 2009