UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| THOMAS AIELLOS, JOSEPH INGLIMA, DONALD PIERCE, SCOTT SYBEL, ANTHONY DUARDO, RALPH CAVALLO, and VINCENT RIOTTO,<br><br>    Plaintiffs,<br><br>v.<br><br>CHIEF C. KENNETH ZISA, JOSEPH ZISA, TOMAS PADILLA, KEVIN TOOMEY, ANTHONY TREZZA, PHILLIP CARROLL, CAPTAIN THOMAS SALCEDO, CITY OF HACKENSACK, and SERGEANT TIMOTHY LLOYD,<br><br>    Defendants. | Civil Action Number: 09-3076<br><br><br>OPINION<br><br>HON. WILLIAM J. MARTINI |

**MEMORANDUM OPINION**[1]

**I.   INTRODUCTION**

On June 24, 2009, Plaintiffs, current and former officers of the Hackensack Police Department ("HPD"), filed an eleven-count civil rights action against Defendant HPD Chief

---

[1] For the convenience of the reader of this document in electronic format, hyperlinks to the Court's record and to authority cited herein may be inserted. No endorsement of any provider of electronic or other resources is intended by the Court's practice of using hyperlinks.

of Police, C. Kenneth Zisa, and others, alleging that the Defendants violated their constitutional rights. (Doc. No. 1.) On August 3, 2009, Plaintiffs filed a more detailed twelve-count Amended Complaint, (Doc. No. 9), which has since become the operative complaint by order of the Court, (Doc. No. 19).

Presently before the Court is Defendant Tomas Padilla's motion to dismiss (the "Motion"), (Doc. No. 3), which although filed prior to the Amended Complaint, addresses the Amended Complaint through supplemental briefing. Padilla's motion has been fully briefed. *See* Memorandum of Law in Support of Defendant, Tomas Padilla's, Motion to Dismiss Pursuant to F.R.C.P. 12(b)(6) ("Opening Br."), (Doc. No. 3-5); Memorandum of Law in Opposition to Defendant Padilla's Motion to Dismiss Pursuant to F.R.C.P. 12(b)(6) ("Opp'n Br."), (Doc. No. 10); Tomas Padilla Reply Brief ("Reply Br."), (Doc. No. 18); *see also* Supplemental Opening Brief ("Supp. Opening Br."), (Doc. No. 26); Supplemental Opposition Brief (Supp. Opp'n Br."), (Doc. No. 29). Of the twelve counts in the Amended Complaint, only four are litigated in the Motion. They include: (A) Count I–the 42 U.S.C. § 1983 (the "Section 1983") claim; (B) Count II–the Racketeer Influenced Corrupt Organizations Act ("RICO") claim; (C) Count IV–the conspiracy claim; and (D) Count XII-–the Misappropriation of Funds and Breach of Fiduciary Relationship claim.

Having considered the parties' filings (including supplemental filings addressing the Amended Complaint), federal and state constitutional and statutory law, case law, and persuasive scholarly authority, the Court, for the reasons elaborated below, will **GRANT** in

part, and **DENY** in part, Defendant Padilla's motion to dismiss. Specifically, Counts II and XII are dismissed against Padilla; the motion is **DENIED** in all other respects.

## II.  FACTUAL BACKGROUND ALLEGED IN THE AMENDED COMPLAINT

The gravamen of the Amended Complaint is that the Hackensack Chief of Police, Defendant Zisa, in conjunction with Defendant Captain Padilla, (the movant of the Motion), and other Defendants engaged in a pattern of extortion, against other HPD officers, i.e., Plaintiffs, seeking, among other things, political donations to further Zisa and Padilla's political career and the political career of those allied with them, including candidates for office within the Policemen's Benevolent Association ("PBA") of Hackensack. It is further alleged that those who were not allied with Zisa and Padilla, including those officers who refused to donate to their political campaigns, were subject to retaliation and threats of retaliation in violation of Plaintiffs' First Amendment free speech and freedom of association rights. Thereafter, Plaintiffs filed a complaint, subsequently superseded by the Amended Complaint, and Defendant Padilla brought the instant motion to dismiss.

## III.  STANDARD OF REVIEW

The Defendant's motion to dismiss is brought pursuant to the provisions of Fed. R. Civ. P. 12(b)(6). This rule provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears

the burden of showing that no claim has been stated, *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (abrogating "no set of facts" language found in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). The facts alleged must be sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" necessary elements of the plaintiff's cause of action. *Id*. Furthermore, in order satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and quotations marks omitted) (quoting *Twombly*, 550 U.S. at 555).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. *Sands v. McCormick*, 502 F.3d 263 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached

4

to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002). However, the court may not rely on other parts of the record in determining a motion to dismiss. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

IV. **ANALYSIS**

The motion argues, and Plaintiffs do not contest, that only four of the counts in the Amended Complaint, i.e., (A) Count I–the Section 1983 claim; (B) Count II–the RICO claim; (C) Count IV–the conspiracy claim; and (D) Count XII–the Misappropriation of Funds and Breach of Fiduciary Relationship claim, apply to Defendant Padilla, and it further argues, on a variety of grounds, that each of these four counts against Defendant Padilla should be dismissed for failure to state a claim. This opinion addresses each of Defendant Padilla's contentions in turn. At the outset, however, the Court notes that Plaintiffs' Supplemental Opposition Brief concedes that Count XII does not apply to Padilla,[2] and, therefore, the Court need not reach the merits of Defendant's argument and will dismiss this count in regard to Padilla.

A. COUNT I–THE SECTION 1983 CLAIM

Count I of the Amended Complaint alleges that Defendants, including Defendant

---

[2] Plaintiffs' concession to the effect that "Defendant Padilla is not named as a Defendant in Count XII," Supp. Opp'n Br. 9, is puzzling. The Amended Complaint expressly names Padilla as a defendant. *See* Amended Complaint 46. (Doc. No. 9.)

5

Padilla, violated Plaintiffs' First Amendment free speech and freedom of association rights, as secured by the Fourteenth Amendment and by Section 1983. (Doc. No. 9.) Defendant has challenged the sufficiency of the Amended Complaint's Section 1983 claim on a number of grounds. *See* Supp. Opening Br. 4-8, (Doc. No. 26) (incorporating by reference Opening Br. 10-14, (Doc. No. 3-5)).

1.      The Free Speech Claim

The parties agree that Plaintiffs' free speech claim is governed by the *Pickering-Connick* test.[3] *See* Opening Br. 10, (Doc. No. 3-5); Opp'n Br. 9, (Doc. No. 10). As this Court has explained:

> Section 1983 provides for a cause of action when a state actor retaliates against an individual for participating or engaging in conduct protected by the First Amendment. To state a First Amendment retaliation claim, the plaintiff must allege that (1) the plaintiff's conduct was protected by the First Amendment because it addressed a matter of public concern, (2) the plaintiff was retaliated against, and (3) the protected conduct was a substantial or motivating factor in the alleged retaliation. *See Ober v. Brown*, 105 Fed. Appx. 345, 346-47 (3d Cir. 2004) (explaining that to prevail on a First Amendment retaliation claim the plaintiff must establish that (1) he or she engaged in protected activity, (2) the defendants retaliated in response to the activity, and (3) the defendants could not rebut the claim by showing that they would have taken the same action in the absence of the protected speech). The employer can rebut the plaintiff's claim by demonstrating that it would have made the same decision absent the protected conduct. A plaintiff's conduct is protected by the First Amendment when it is about a matter of public concern and the employer does not have a justification for treating the employee differently than other members of the general public.
> 
> The Court determines as a matter of law if an activity constitutes

---

[3] *See Connick v. Myers*, 461 U.S. 138 (1983); *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968).

6

> protected speech. However, whether the retaliatory action of the defendant reached the threshold of actionability under § 1983 is a factual question for the trier of fact. An employment action is considered adverse, for the purposes of determining unlawful retaliation, if it is likely to chill a person of ordinary firmness in the exercise of their First Amendment rights.

*Myers v. County of Somerset*, 515 F. Supp. 2d 492, 500-01 (D.N.J. 2007) (citations and quotation marks omitted); Opening Br. 10 (citing *Myers* approvingly), (Doc. No. 3-5); Opp'n Br. 10 (same), (Doc. No. 10).

Defendant Padilla argues that the allegations of the Complaint only connect Padilla to the alleged wrongs through formulaic, blanket, and conclusory allegations, i.e., that "Padilla 'infringed on [Plaintiffs'] First Amendment rights,'" Opening Br. 12 (apparently intended to paraphrase or quote the Complaint), (Doc. No. 3-5), and, more specifically, fail to properly allege the second element of the three-part test elaborated above. In other words, Padilla argues that Plaintiffs' allegations do not amount even to a prima facie case because:

> the adverse actions of which, [Plaintiffs] complain, each and every one of them, were **actions of Plaintiff's** [sic] **employer**, not [Defendant] Padilla and nowhere in 55 pages do Plaintiffs allege otherwise. As a practical matter, common sense, as well as constitutional law ... Defendant [Padilla] must play some role in the violations which Plaintiffs claim.... Padilla ... **has not been alleged** to have taken any affirmative action vis-a-vis the Plaintiffs.

*Id*. at 11-12, (Doc. No. 3-5) (emphasis in the original).

Plaintiffs respond that their Amended Complaint alleges specific well-pled facts which, if proven, would establish that Padilla – himself – took or threatened to take retaliatory adverse actions. The Court agrees. For example, the Amended Complaint states: "After the PBA Delegate election, Defendant Padilla threatened [Plaintiff] Inglima with

7

unwarranted [work-related] disciplinary action by stating to Inglima that [Inglima] would be closely watched and observed and would be disciplined if [Inglima] failed to wear his hat or commit[ted] any minor infractions." Amend. Compl. ¶ 80, (Doc. No. 9); Opp'n Br. 7 (same). Likewise, the Amended Complaint states: "Padilla also approached Plaintiff Donald Pierce during this time period and asked Pierce how could Padilla *get rid* of Plaintiff Aiellos." Amended Complaint ¶ 56 (emphasis added), (Doc. No. 9); Opp'n Br. 6 (same). Such allegations cannot by any means be reasonably characterized as "conclusory" or a mere "formulaic" recitation of the statutory elements of a Section 1983 claim; moreover, these allegations can fairly be understood to constitute threats of wrongful discharge.

Section 1983 will protect a public employee not only against actual retaliation in the workplace by supervisors taken in regard to the employee's exercise of protected First Amendment rights, but it will also protect the employee against threats to retaliate. *See, e.g.*, *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 687 (4th Cir. 2000) (indicating that a threat taken in retaliation for the exercise of protected First Amendment free speech rights is actionable under Section 1983); *see also Saxe v. State Coll. Area Sch. Dist.*, 240 F.3d 200, 208 (3d Cir. 2001) (noting in a Section 1983 suit alleging a First Amendment free speech violation that "a supervisor's statement 'sleep with me or you're fired' may be proscribed not on the ground of any expressive idea that the statement communicates, but rather because it facilitates the *threat* of discriminatory conduct.") (emphasis added), *rev'd*, 77 F. Supp. 2d 621 (M.D. Pa. 1999); *McClintock v. Eichelberger*, 169 F.3d 812, 819 (3d Cir. 1999)

8

(explaining that under Supreme Court precedent the "*threat* of loss" of government employment or a government contract in retaliation for the exercise of protected First Amendment free expression rights is actionable under Section 1983) (emphasis added).[4] Plaintiffs' Amended Complaint, which makes allegations of threatened retaliation in regard to the exercise of First Amendment rights, seems to meet the legal standard as elaborated upon by Third Circuit case law.

Not only does Defendant Padilla argue that the retaliatory actions alleged by Plaintiffs were not committed by Padilla, but Padilla also argues that he, apparently as a matter of law, had "no authority to fire, demote, or otherwise take any retaliatory action against Plaintiffs." Supp. Opening Br. 5, (Doc. No. 26). Padilla however cites no law in support of his legal position. Moreover, even if it were a correct statement of what was the limit of Padilla's lawful authority over Plaintiffs, a Section 1983 claim may be brought against a supervisor, e.g., Captain Padilla, in regard to retaliatory conduct connected to an underling's free speech and free association rights even if the supervisor has no formal power to discharge the employee if the supervisor's conduct could constructively discharge the employee in

---

[4] *See also Elrod v. Burns*, 427 U.S. 347, 359 (1976) (plurality opinion) ("The threat of dismissal for failure to provide [support for the favored political party] unquestionably inhibits protected belief and association, and dismissal for failure to provide support only penalizes its exercise."); 427 U.S. at 375 (Stewart, J., concurring in judgment) ("The single substantive question involved in this case is whether a nonpolicymaking, nonconfidential government employee can be discharged or threatened with discharge from a job that he is satisfactorily performing upon the sole ground of his political beliefs. I agree with the plurality that he cannot.").

connection with disciplinary charges or proceedings initiated by the supervisor. *See Hill v. Borough of Kutztown*, 455 F.3d 225, 240 (3d Cir. 2006) (holding in adjudicating a First Amendment claim that "[a] supervisor who lacks the power to terminate a subordinate's employment may nonetheless abuse his power with respect to that subordinate, and may even constructively discharge the subordinate, provided he (the supervisor) exercises *some power* over the employee") (citing *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 23-25 (3d Cir. 1997)). This is what Plaintiffs allege here: "Defendant Padilla is a Captain with supervisory duties and authority to institute disciplinary action," Amend. Compl. ¶ 19, (Doc. No. 9); Supp. Opp'n Br. 1 (same); "Defendant Padilla threatened [Plaintiff] Inglima with unwarranted [work-related] disciplinary action by stating to Inglima that [Inglima] would be closely watched and observed and would be disciplined if [Inglima] failed to wear his hat or commit[ted] any minor infractions," Amend. Compl. ¶ 80, (Doc. No. 9); Opp'n Br. 7 (same). It follows that to the extent Plaintiffs' allegations are understood as relating to wrongful threats of discharge or constructive discharge founded on wrongful disciplinary action, Plaintiffs' claim cannot be dismissed for being *de minimis* or trivial. *See* Supp. Opening Br. 5, (Doc. No. 26). Indeed, protection against wrongful discharge is the core of the First Amendment right at issue here. *Cf. Elrod v. Burns*, 427 U.S. 347, 359 (1976) (plurality opinion) ("The threat of dismissal for failure to provide [support for the favored political party] unquestionably inhibits protected belief and association, and dismissal for failure to

10

provide support only penalizes its exercise.").[5]

Finally, in supplemental briefing, Padilla argues that Plaintiffs' allegations do not give rise to a First Amendment retaliation claim because "Plaintiffs' speech was not a matter of public concern," Supp. Opening Br. 7 (citing *Gaj v. United States*, 800 F.2d 64 (3d Cir. 1986)), (Doc. No. 26), in conformity with the first element of the three element test laid out in *Myers v. County of Somerset*, 515 F. Supp. 2d 492, 500-01 (D.N.J. 2007). In *Gaj*, the Third Circuit explained:

> In *Connick v. Meyers*, 461 U.S. 138, 103 S. Ct. 1684 (1983), the Supreme Court held that:
>
>> when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.
>
> *Id*. at 147, 103 S. Ct. at 1690. The Court stressed that a careful factual inquiry must be made. "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Id*. at 147-48, 103 S. Ct. at 1690. Gaj's complaints concerned the noise level and conveyor belt maintenance. While in some instances such complaints might comprise criticisms of the safety policies of the Postal Service and therefore rise to the level of public

---

[5] Defendant's citation to *Benningfield v. City of Houston*, 157 F.3d 369 (5th Cir. 1998), is not convincing. In that case, the Fifth Circuit held that "mere accusations [i.e., verbal criticism], without more, are not adverse employment actions" giving rise to a First Amendment retaliation claim. *Id*. at 376. In the instant litigation, more than mere criticism is alleged; Plaintiffs allege that Padilla, who had supervisory authority over Plaintiffs, threatened to take wrongful disciplinary action.

11

>concern, that is not the situation here. Rather, Gaj was merely expressing himself as an employee dissatisfied with his own conditions of employment. He stated in his affidavit: "These ... safety complaints were not made to protect the interest of other employees but were made to protect myself." The record as a whole reveals that Gaj "did not seek to inform the public that the [Postal Service] was not discharging its governmental responsibilities ... nor ... seek to bring to light actual or potential wrongdoing or breach of public trust." *Connick*, 461 U.S. at 148, 103 S. Ct. at 1691.

*Gaj*, 800 F.2d at 67 (quoting *Connick*, 461 U.S. at 147). In other words, "[t]o sustain [their] burden, Plaintiffs must show that they spoke primarily in their roles as a citizen on a matter of public concern, rather than as an employee addressing matters of only personal interest." Supp. Opening Br. 7, (Doc. No. 26). The Court is of the view that the allegations of the Amended Complaint meet this standard. In *Gaj*, the plaintiff argued that retaliation arose in consequence of the exercise of First Amendment rights related to his personal workplace safety conditions. Not so here. In this litigation, Plaintiffs allege that Padilla and others retaliated and threatened to retaliate in consequence of Plaintiffs' exercise of free speech and freedom association rights related both to elections to public office and to elections within the (private) Policemen's Benevolent Association of Hackensack. It may be that some (but not all) of the allegedly protected speech and association rights were exercised on government premises, but if so, that is incidental to Plaintiffs' claim. The gravamen of the claim is that Defendants (including Padilla) were attempting to coerce Plaintiffs (before-the-fact[6]) and to punish or retaliate against Plaintiffs (after-the-fact[7]) in consequence of

---

[6] *See, e.g.*, Amend. Compl. ¶ 70 ("Padilla using his authority as a Captain, stated to numerous police officers and supervisory officers within the HPD that they should vote for

Plaintiffs' exercising their First Amendment rights. The location where the underlying speech or association took place is irrelevant. It seems equally clear that the exercise of free speech and free association rights, relating to elections, are matters of public concern.[8] Although speech relating to an election within the PBA does not fall precisely within the core of (protected) political speech, it is even further removed from the (unprotected) speech Gaj sought to protect: speech relating to personal workplace conditions. Elections to the PBA might very well be a matter of public concern in a way that Gaj's personal workplace conditions are not.

 2. The Freedom of Association Claim

The parties agree that the legal test to be applied to a freedom of association claim is found in the *Elrod-Branti-Rutan* trilogy.[9] *See* Opening Br. 13, (Doc. No. 3-5); Opp'n Br. 16, (Doc. No. 10). Under this standard, to make a out a prima facie case, the plaintiff must show: (1) he was an employee of a public agency in a position that does not require political affiliation; (2) the employee maintained a political affiliation; and (3) that political affiliation

---

[PBA candidate] Clouse [as a delegate] and intimated that if they supported Inglima they would be retaliated against."), (Doc. No. 9).

[7] *See, e.g.*, Amend. Compl. ¶ 80 ("These statements were made [by Padilla] to intimidate the Plaintiff in retaliation for Plaintiff [sic] refusing to step down as a candidate for PBA delegate."), (Doc. No. 9).

[8] *See Curinga v. City of Clairton*, 357 F.3d 305, 313 (3d Cir. 2004).

[9] *Elrod v. Burns*, 427 U.S. 347, 359 (1976); *Branti v. Finkel*, 445 U.S. 507 (1980); *Rutan v. Republican Party of Ill.*, 497 U.S. 62 (1990).

was a substantial or motivating factor in a retaliatory adverse employment decision by the government. *See Laskaris v. Thornburgh*, 733 F.2d 260, 264-65 (3d Cir. 1984); *see also* Opening Br. 13, (Doc. No. 3-5); Opp'n Br. 16, (Doc. No. 10).

Padilla argues that the allegations fail in regard to the third element of the legal test described above, i.e., "Plaintiffs do not even allege that Padilla engaged in a course of retaliatory conduct or even that he was passively involved in some way." Opening Br. 14, (Doc. No. 3-5).[10] Defendant's position on this point was already addressed in relation to Plaintiffs' free speech claim. *See* Section IV[A][1], *supra*. For the reasons it was rejected in regard to the free speech claim, it is also rejected in regard to the freedom of association claim. Defendant further argues that dismissal is appropriate because "Plaintiffs make no mention whatsoever in their Complaint that any of them, either collectively or as individuals, maintained any affiliation with any particular political party and/or that adverse employment action was taken against any of them due to that affiliation." Opening Br. 13, (Doc. No. 3-5). To the extent that Padilla is arguing that affiliation with a "political party" is a precondition of a freedom of association claim, his position is rejected as a matter of law. It is true that any number of freedom of association cases speak to party affiliation, but that is because on the facts of those specific cases, the plaintiff was himself or herself a party member and

---

[10] Defendant Padilla's papers are not clear on this point. It is possible that in light of the Amended Complaint, Padilla no longer maintains this position. Nevertheless, in an abundance of caution, the Court addresses this argument and Padilla's other arguments relating to freedom of association.

14

complained of retaliation in regard to party membership. Moreover, the case law expounding on freedom of association rights regularly speaks to "political affiliation" without further specifically requiring "party affiliation." Indeed, this is true of the case law cited by Padilla. *See* Opening Br. 13 (citing *Laskaris*, 733 F.2d at 264-65). The Court is aware of no case expressly requiring affiliation with a political party as opposed to mere political affiliation with, for example, a candidate or a cause or a political position on a petition or referendum, as a precondition to bringing a Section 1983 claim founded in First Amendment freedom of association rights. Nor can the Court imagine why affiliation with a party candidate is deserving constitutional protection, but affiliation with an independent candidate would go lacking similar protections. Freedom of association rights involving the political party of one's choice are, without doubt, at the core of protected First Amendment rights, but they are not the whole of that right. *See Elrod*, 427 U.S. at 357 (plurality opinion) ("There can no longer be any doubt that freedom to associate with others for the common advancement of *political beliefs* and *ideas* is a form of 'orderly group activity' protected by the First and Fourteenth Amendments.") (emphasis added) (citing *NAACP v. Button*, 371 U.S. 415, 430 (1963) [(vindicating the right to solicit legal business)]; *Bates v. Little Rock*, 361 U.S. 516 (1960) [(vindicating organization's right to keep membership anonymous)]; *NAACP v. Alabama*, 357 U.S. 449 (1958)). Inglima's right to run for PBA office and associate with people of a like mind falls under the protection of the First Amendment. *See*, *e.g.*, Amend. Compl. ¶¶ 70, 80.

B.     COUNT II–THE RICO CLAIM

Count II of the Amended Complaint brings a cause of action against Padilla[11] under Section 1962(b) of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), Pub. L. 91-452, 84 Stat. 941, *as amended*, 18 U.S.C. §§ 1961-1968. Section 1962(b) provides:

> It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

The Third Circuit has explained that in order to establish liability under Section 1962(b):

> [A] plaintiff must show injury from the defendant's *acquisition or control of an interest in a RICO enterprise, in addition to injury from the predicate acts*. Such an injury may be shown, for example, where the owner of an enterprise infiltrated by the defendant as a result of racketeering activities is injured by the defendant's acquisition or control of his enterprise. In addition, the plaintiff must establish that the interest or control of the RICO enterprise by the person is as a result of racketeering. It is not enough for the plaintiff merely to show that a person engaged in racketeering has an otherwise legitimate interest in an enterprise. Rather, it must be established firmly that there is a nexus between the interest and the alleged racketeering activities.

*Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1190 (3d Cir. 1993) (citations and quotation marks omitted) (emphasis added); Supp. Opening Br. 9-10 (quoting *Lightning Lube*, *supra*), (Doc. No. 26); Supp. Opp'n Br. 4 (same), (Doc. No. 29).

The gravamen of the Amended Complaint is that Defendants Zisa, Padilla, and others

---

[11] Unhelpfully, it appears that Padilla is nowhere expressly mentioned in the individual paragraphs within Count II, see Amend. Compl. ¶¶ 246-64, (Doc. No. 9), the bulk of which makes particularized allegations of wrongdoing against Defendant Zisa. Allegations against Padilla, to the extent that they are pled, are made through paragraph 246, incorporating by reference into Count II all prior factual allegations within the Amended Complaint.

engaged in a pattern of extortion, in conjunction with threats of retaliation, to maintain control of the office of Hackensack Chief of Police, the purported RICO enterprise.[12] Plaintiffs have alleged that there is a nexus between the pattern of racketeering and Padilla's control (in concert with others) of the enterprise, i.e., Zisa's control of public office made it possible for him to engage in the alleged extortion and the monies extorted maintained his (and their) control of that and other elective office. But the nexus requirement is separate from the injury requirement. However, Plaintiffs have failed to articulate any injury that they suffered in consequence of Zisa, and Padilla, and others' acquisition or maintenance of control of the RICO enterprise, here a government office, apart from the pattern of racketeering itself. Under *Lightning Lube*, it appears that absent "acquisition or maintenance injury," apart from injury connected to the predicate acts or pattern of racketeering activity, Plaintiffs cannot proceed on a theory of RICO liability. DAVID B. SMITH & TERRANCE G. REED, CIVIL RICO ¶ 6.04[6][b], at 6-141 (2009); *see also Lightning Lube*, 4 F.3d at 1191 ("[A] well-pled complaint under section 1962(b) ... requires the assertion of an injury

---

[12] *Compare* Supp. Opening Br. 10 n.2 (suggesting that the RICO enterprise was the Hackensack Police Department as a whole), (Doc. No. 26), *with* Supp. Opp'n Br. 4 (clarifying that the RICO enterprise was the Hackensack Office of Chief of Police), (Doc. No. 29). Padilla affirms that the "proposition" that RICO could extend to "Hackensack Police Department" would "wholly remove this case form any semblance of rationality." Supp. Opening Br. 10 n.2. *But see Genty v. Resolution Trust Corp.*, 937 F.2d 899, 906-07 (3d Cir. 1991) (noting that "[i]mposition of civil RICO liability [under Section 1962(a)] thus requires the existence of a 'person' engaged in racketeering as well as an 'enterprise' through which the illegal conduct occurs. An enterprise may be a public entity, like Gloucester Township").

independent from that caused by the pattern of racketeering."). For this reason, its appears that the RICO claim must be dismissed.

    C.    COUNT IV–THE CONSPIRACY CLAIM

The original complaint's conspiracy count was brought under 42 U.S.C. § 1985; however, this language was dropped from the Amended Complaint. *Compare* Compl. ¶ 42, (Doc. No. 1), *with* Amend. Compl. ¶ 46, (Doc. No. 9). The Amended Complaint fails to expressly address whether the conspiracy claim arises under federal law or state law or both in the alternative. It fails to cite Section 1983 or Section 1985 or any other federal statute. Defendant understands the Amended Complaint to be asserted as a common law claim. *See* Reply Br. 2, (Doc. No. 18); Supp. Opening Br. 5, (Doc. No. 26). Plaintiffs' brief in opposition fails to expressly address this point. Supp. Opp'n Br. 8-9, (Doc. No. 29). Given Plaintiffs' silence in his opposition brief,[13] and given that the original complaint expressly asserted conspiracy liability under federal law, i.e., Section 1985, but this language was subsequently dropped from the Amended Complaint, it appears that Defendant's position is well-taken and the Court will construe Plaintiffs' conspiracy claim as one asserted exclusively under state or common law. Under New Jersey law, which appears to control under any relevant choice of law test, the "elements of a civil conspiracy, [include the]

---

[13] The section of Plaintiffs' opposition brief, Supp. Opp'n Br. 8, (Doc. No. 29), which seeks to defend the conspiracy count cites a single case: *Feliz v. Kintock Group*, 297 Fed. App'x 131 (3d Cir. 2008). *Feliz* does discuss conspiracy liability, but it is unclear as to whether it is adjudicating state or federal conspiracy law. As such, it hardly clarifies Plaintiffs' position in the instant litigation.

combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or an injury upon another, and an overt act that results in damage." *LoBiondo v. Schwartz*, 970 A.2d 1007, 1029 (N.J. 2009) (quotation marks omitted).

In Count IV, Plaintiffs allege that Zisa, Padilla, and others conspired to violate Plaintiffs' First Amendment free speech and freedom of association rights. Amend. Compl. ¶ 46, (Doc. No. 9). Padilla argues that absent an underlying actionable wrong, a common law conspiracy action must fail, i.e., "[a]ctionable civil conspiracy must be based on an existing independent wrong or tort that would constitute a valid cause of action if committed by one actor." *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209, 1218 (11th Cir. 1999) (expounding on Florida law); Supp. Opening Br. 13 (quoting *Posner*, *supra*), (Doc. No. 26). Padilla maintains that the conspiracy action must fail because the underlying First Amendment claims fail. Padilla's argument is rejected. The Court has already held that *both* of Plaintiffs' First Amendment claims survive Padilla's motion to dismiss. *See* Section IV[A][1-2], *supra*. Therefore Padilla's challenge to the conspiracy count fails.

## V.     CONCLUSION

For the reasons elaborated above, the Court **GRANTS** in part, and **DENIES** in part, Defendant Tomas Padilla's motion to dismiss. Specifically, Counts II and XII are dismissed against Padilla; the motion is **DENIED** in all other respects.

An appropriate Order accompanies this memorandum opinion.

s/ William J. Martini
**William J. Martini, U.S.D.J.**

DATE: October 20, 2009