UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| THOMAS AIELLOS, JOSEPH INGLIMA, DONALD PIERCE, SCOTT SYBEL, ANTHONY DUARDO, RALPH CAVALLO, and VINCENT RIOTTO,<br><br>    Plaintiffs,<br><br>v.<br><br>CHIEF C. KENNETH ZISA, JOSEPH ZISA, TOMAS PADILLA, KEVIN TOOMEY, ANTHONY TREZZA, PHILLIP CARROLL, CAPTAIN THOMAS SALCEDO, CITY OF HACKENSACK, and SERGEANT TIMOTHY LLOYD,<br><br>    Defendants. | Civil Action Number: 2:09-3076<br><br>OPINION<br><br>HON. WILLIAM J. MARTINI |

**MEMORANDUM OPINION**[1]

I.    **INTRODUCTION**

On June 24, 2009, Plaintiffs, current and former officers of the Hackensack Police Department ("HPD"), filed an eleven-count civil rights action against Defendant HPD Chief of Police, C. Kenneth Zisa, and others, including the City of Hackensack, alleging that the

---

[1] For the convenience of the reader of this document in electronic format, hyperlinks to the Court's record and to authority cited herein may be inserted. No endorsement of any provider of electronic or other resources is intended by the Court's practice of using hyperlinks.

Defendants violated their constitutional rights. (Doc. No. 1.) On August 3, 2009, Plaintiffs filed a more detailed twelve-count Amended Complaint, (Doc. No. 9), which has since become the operative complaint by order of the Court, (Doc. No. 19).

This Court has already had occasion to rule on Tomas Padilla's motion to dismiss. *See* Doc. No. 3 (motion and opening brief), Doc. No. 26 (supplemental opening brief in light of amended complaint), Doc. No. 47 (opinion granting in part and denying in part Padilla's motion, and dismissing RICO count), Doc. No. 56 (opinion denying reconsideration).

In prior proceedings, Defendant Zisa filed a late reply brief in regard to his, that is Zisa's, (separately brought) motion to dismiss. Plaintiffs sought to strike the late reply brief and sought to preclude counsel for Defendant Zisa and counsel for Defendant Captain Thomas Salcedo (the "Defendant") from filing separate motions to dismiss. Plaintiffs argued that the filings were duplicative and that Zisa's counsel, in fact, represented Salcedo too – such that a separate filing from Salcedo was, in effect, two bites at the apple. This Court rejected Plaintiffs' application. (Doc. No. 54.)

Presently before the Court is Defendant Salcedo's motion to dismiss pursuant to Rule 12(b)(6) (the "Motion"). (Doc. No. 30.) The Motion is fully briefed. *See* Doc. No. 30-1 (the "Opening Brief"); Doc. No. 45 (the "Opposition Brief"); Doc. No. 49 (the "Reply Brief"). Of the twelve counts in the Amended Complaint, only two are litigated in the Motion, as they are the only two counts brought against Defendant. They include: (A) Count IV – the state law civil conspiracy claim; and (B) Count IX – the Conscientious

Employee Protection Act Claim, N.J.S.A. 34:19-3.

Having considered the parties' filings, state statutory law, the federal rules, case law, and persuasive scholarly authority, the Court, for the reasons elaborated below, will **GRANT** in part, and **DENY** in part, Salcedo's Motion.  Count IX will be dismissed; all other relief is denied.

II.     **FACTUAL BACKGROUND ALLEGED IN THE AMENDED COMPLAINT**[2]

The gravamen of the Amended Complaint is that the Hackensack Chief of Police, Defendant Zisa and Defendant Captain Padilla, and other defendants, including Defendant Salcedo, engaged in a pattern of extortion, against other HPD officers, i.e., Plaintiffs, seeking, among other things, political donations to further Zisa and Padilla's political career and the political career of those allied with them, including candidates for office within the Policemen's Benevolent Association ("PBA") of Hackensack. It is further alleged that those who were not allied with Zisa and Padilla, including those officers who refused to donate to their political campaigns, were subject to retaliation and threats of retaliation in violation of Plaintiffs' First Amendment free speech and freedom of association rights. Thereafter, Plaintiffs filed a complaint, subsequently superseded by the Amended Complaint, and, afterwards, Defendant Salcedo brought the instant motion to dismiss. (Doc. No. 30.)

---

[2] For a fuller development of the allegations, procedural posture, and the law of this case, the Court refers the parties and others to this Court's prior orders and memoranda opinions. *See, e.g.*, Docs. Nos. 47, 54 & 56.

3

### III.   STANDARD OF REVIEW

The Defendant's motion to dismiss is brought pursuant to the provisions of Fed. R. Civ. P. 12(b)(6). This rule provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (abrogating "no set of facts" language found in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). The facts alleged must be sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" necessary elements of the plaintiff's cause of action. *Id*. Furthermore, in order satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and quotations marks omitted) (quoting *Twombly*, 550 U.S. at 555).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. *Sands v. McCormick*, 502 F.3d 263 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a

4

defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002). Generally, the court may not rely on other parts of the record in determining a motion to dismiss. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

**IV.   ANALYSIS**

The motion argues, and Plaintiffs do not contest, that only two of the counts in the Amended Complaint, i.e., (A) Count IV – the civil conspiracy claim; and (B) Count IX – the Conscientious Employee Protection Act Claim, apply to the Defendant, Captain Thomas Salcedo, and it further argues, on a variety of grounds, that each of the two counts against the Defendant should be dismissed for failure to state a claim. This opinion addresses each of Defendant's contentions in turn.

   A.   COUNT IV – CIVIL CONSPIRACY UNDER STATE LAW

First, Defendant argues that, under New Jersey state or common law, a civil conspiracy is "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an

5

agreement between the parties to inflict a wrong against or injury upon another ....” *Banco Popular N.A. v. Gandi*, 876 A.2d 253, 263 (N.J. 2005), and that a plaintiff must allege "a single plan, the essential nature and general scope of which [was] known to each person who is to be held responsible for its consequences." *Morgan v. Union County Bd. of Chosen Freeholders*, 633 A.2d 985, 999 (N.J. Super. Ct. App. Div. 1993); *cf. Kronfeld v. First Jersey Nat. Bank*, 638 F. Supp. 1454, 1469 (D.N.J. 1986) (holding, with respect to federal conspiracy law, "[t]he additional element of a conspiracy – an agreement between the alleged conspirator[s] [sic] – cannot be conclusionally pled. Specific facts of an agreement must be alleged."). The Court agrees: in order to withstand the instant motion to dismiss, Plaintiffs must make some allegations tying this Defendant to the alleged Zisa-Padilla conspiracy which sought to extract by threats support and funds from HPD officers, and allegedly where threats failed to retaliate against recalcitrant officers, thereby denying Plaintiffs their First Amendment Free Expression and Freedom of Association rights. Plaintiffs' allegations appear to be sufficient under this standard.

Generally, Plaintiffs allege that Zisa and Padilla sought to coerce Aiellos, and that Toomey, also allied with Zisa-Padilla, had an altercation with Aiellos. Plaintiff Duardo allegedly witnessed the altercation, attempted to report it, but was "induced to write a false report by Captain Salcedo," and, thereafter, was transferred in retaliation. Amend. Compl. ¶¶ 151-56. Salcedo was not a party to the altercation, and he had no obvious personal motive to intervene. Thus, one could reasonably infer, assuming these allegations to be true, that the

6

Defendant was working to protect Zisa, Padilla, and their alleged operative, Toomey. One could also infer that the Defendant was part of the Zisa-Padilla group, knew of and agreed to the alleged ongoing plan to control HPD officers, extract financial support from them, and to punish them should they fail to comply.

Alternatively, Defendant argues that, as a matter of law, the agents and officers of the HPD cannot conspire with one another or with the City of Hackensack, as long as the alleged wrongdoing was taken in the scope of their employment. *See Sunkett v. Misci*, 183 F. Supp. 2d 691, 722 (D.N.J. 2002) ("[O]fficers of governmental entities cannot conspire with the entity.... The same principles suggest that officers acting within the scope of their employment cannot conspire together."); Opening Brief 18-24 (collecting case law).

The Court will not dismiss the civil conspiracy claim against Salcedo at this time. The precedents put forward in support of dismissal by Salcedo are uniformly federal district court authority from this district interpreting New Jersey state law. Such authority attempts to predict what the New Jersey Supreme Court would do if faced with an identical claim. Salcedo has put forward no New Jersey Supreme Court authority on this point. Indeed, he has put forward no state court authority at all. This is not a criticism. This Court's own research has found no on-pont state trial court or appellate decisions from the New Jersey state courts.

It appears that the federal courts which have rejected claims of intracorporate conspiracy did so, in large part, because the Supreme Court of the United States rejected

7

finding an intracorporate conspiracy in *Copperweld v. Independence Tube*, 467 U.S. 752 (1984) (Burger, C.J.). *Copperweld* was an antitrust case. In reaching its decision, the Supreme Court was determining the meaning of a federal statute, see Sherman Act, 26 Stat. 209, *as amended*, 15 U.S.C. § 1, and Congress' intent in regard to that statute. Such considerations are not at play here, where this Court's function is to predict what the Supreme Court of New Jersey would do if faced with an identical claim. Moreover, it is not at all clear that the principles, purposes, and policies animating the intracorporate conspiracy doctrine should apply on the facts of this case. This Court predicts that the Supreme Court of New Jersey would adopt the intracorporate conspiracy doctrine in regard to a common law conspiracy claim *if* the principles, purposes, and policies animating the doctrine squarely apply to the facts of a case before it. But the facts relevant to that determination are unclear (as this question has not been briefed by the movant) and where clear, those very facts are contested, and, therefore, should wait for clarification through discovery. *See Sunkett v. Misci*, 183 F. Supp. 2d at 723-24 (rejecting claim on intracorporate conspiracy grounds at the summary judgment stage).

Moreover, although the Supreme Court applied the intracorporate conspiracy doctrine expansively in *Copperweld*, this Court believes it is likely that if the New Jersey Supreme Court applies this doctrine to civil conspiracy under New Jersey law, it will do so in a more limited fashion. In doing so, this Court predicts that the New Jersey Supreme Court would follow the lead of the Third Circuit which, in interpreting federal civil conspiracy claims

under the civil rights laws, applied the intracorporate conspiracy doctrine, although limiting the reach of that doctrine in certain situations which appear to be at issue here. *See Heffernan v. Hunter*, 189 F.3d 405, 412 (3d Cir. 1999) ("We have addressed this issue in several opinions. In *Novotny v. Great American Federal Savings & Loan Ass'n*, 584 F.2d 1235 (3d Cir. 1978) (en banc), *vacated on other gds.*, 442 U.S. 366 (1979), the plaintiff's complaint did not allege that the corporate defendant conspired with its officers and directors, but rather that a conspiracy existed between the individual officers. Therefore, the issue was whether concerted actions by officers and employees of a corporation could be the basis of a claim under [42 U.S.C.] section 1985(3). We held that it could.... [C]ourts that have followed the doctrine allow a[] [limited] exception when the employees have acted for their sole personal benefit and thus outside the course and scope of their employment.").

  B.  COUNT IX – CONSCIENTIOUS EMPLOYEE PROTECTION ACT

In Count IX, Lieutenant Vincent Riotto brought a Conscientious Employee Protection Act (a "CEPA") claim against Chief Zisa and Defendant Salcedo. *See* Opposition Brief 5 n.1 (clarifying that the claim is asserted under N.J.S.A. 34:19-3(c)(1) ("An employer shall not take any retaliatory action against an employee because the employee does any of the following: c. Objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes: (1) is in violation of a law, or a rule or regulation promulgated pursuant to law ....")). The gravamen of the claim is that Riotto sent a letter to Zisa. The letter reported that one officer threatened another. The letter alleged that Zisa refused to advance

9

officer Ferraioli and others for personal reasons. Finally, the letter alleged that Captain Thomas Salcedo was not a Hackensack resident when he applied for a position with the HPD. Amend. Compl. ¶¶ 181-87; Opposition Brief 3. Two days later Riotto was interrogated by Lieutenant Heinemann on orders from Deputy Chief Koeser. Amend. Compl. ¶¶ 188-203. Six days later, Riotto was again interrogated, this time by Heinemann and Salcedo. *Id.* ¶¶ 206-210. He was subsequently "presented to Dr. Shievella for a mandatory fitness for duty psychological evaluation." *Id.* ¶ 211. Later, he was interrogated by Salcedo, acting alone. *Id.* ¶¶ 214-15. He was also ordered to take a drug test and to release medical information under threat of discipline, and then suspended on 62 pending charges. *Id.* ¶¶ 216-18.[3] In short, Plaintiffs argue: "Riotto is able to demonstrate all ... requirements of a CEPA claim. The first element is sufficiently plead in that Riotto reasonably believed that the officers, including Defendant Salcedo, who had committed fraud in their employment applications had violated a rule or regulation of the Hackensack police department. Secondly, Riotto performed 'whistle-blowing' when he detailed and disclosed these allegations in his letter to Police Chief Zisa. Thirdly, the retaliation [was] taken against him" as set forth above. Opening

---

[3] In Plaintiffs' Opposition Brief, they argue that Salcedo was "in charge of the Internal Affairs investigation that led to false charges being instituted against Riotto by Chief Zisa." Opening Brief 3. But this allegation does not appear in the Amended Complaint. *See* Amend. Compl. ¶¶ 179-221. The Amended Complaint also alleges that Riotto's letter to Zisa stated that Zisa refused to promote officers for "personal" reasons. *Id.* ¶ 185. The Opening Brief recharacterizes this allegation as an objection to Zisa's "practice of *illegally* preventing the career advancement of employees he disliked *or who had not backed Zisa financially or politically* ...." Opening Brief 3 (emphasis added).

Brief 4.

The Defendant argues that the allegations fail to state a CEPA claim. The Court agrees. Section 34:19-3 of the New Jersey Code provides for three independent causes of action under CEPA. Section 34:19-3(a) prevents retaliation against an employee/whistle-blower's "[d]isclos[ure], or threat[s] to disclose," and Section 34:19-3(b) prevents retaliation against an employee/whistle-blower's "[p]roviding information to, or testif[ying] before ... any public body." By contrast Section 34:19-3(c) prevents retaliation against an employee for "[o]bject[ing] to, or refus[ing] to participate in any activity, policy or practice which the employee reasonably believes ... is in violation of a law." It seems to follow that a mere disclosure of a long past wrong, i.e., filing an allegedly false residence in a work application apparently well over a decade ago, although possibly a "disclosure" under Section 34:19-3(a), does not meaningfully qualify as either an "objection" or as an objection to an "activity, policy or practice," a terminology that would seem to connote, if not ongoing activity, at least activity that lasted more than an instant or the time it takes to file a job application. Second, although Plaintiffs allege that Salcedo used a non-Hackensack address in order to secure a position, but in violation of the law, Plaintiffs have failed to identify what "law ... rule or regulation promulgated pursuant to law," Section 34:19-3(c)(1), restricts HPD positions to persons with an HPD residence. It is hardly obvious that this was, in fact, the policy at the time. Nor have Plaintiffs alleged any facts which would support the inference that, even if

this was not actual HPD policy, Riotto's allegations of fraud[4] were otherwise "reasonable." Section 34:19-3. This too would seem to defeat the CEPA claim. Finally, CEPA's statutory text imposes liability on employers, *id*., and, the case law has established that the statute also imposes liability on individuals in certain situations. In other words, "CEPA ... imposes individual liability upon retaliatory parties who act with the authorization of their employers." *Ivan v. County of Middlesex*, 595 F. Supp. 2d 425, 478 (D.N.J. 2009). Here, the allegations relating to retaliatory conduct, other than two interrogations, do not implicate Salcedo. Such allegations are not a sufficient basis to hold Salcedo liable under CEPA. As to Salcedo's two interrogations of Riotto, they do not, individually or collectively, constitute "retaliatory action[s]" as defined by statute or case law. *See* Section 34:19-2(e)("'Retaliatory action' means the discharge, suspension or demotion of an employee, or other adverse employment action taken against an employee in the terms and conditions of employment."); *Beasley v. Passaic County*, 873 A.2d 673, 684 (N.J. Super. Ct. App. Div. 2005) (same); *see also Zamboni v. Stamler*, 847 F.2d 73, 82 (3d Cir. 1988) (Sloviter, J.) ("[P]redict[ing] ... that the New Jersey Supreme Court would confine the tort of unlawful retaliation to formal personnel actions that have an effect on either compensation or job rank ...."); *Borawski v. Henderson*, 265 F. Supp. 2d 475, 486 (D.N.J. 2003) ("Retaliatory action under CEPA is confined to completed ... personnel actions that have an effect on either compensation or job

---

[4] *See* Amend. Compl. ¶ 187 (quoting Riotto's letter to Zisa as stating that Salcedo committed a "fraud" in his job application).

rank."). For all these reasons, the CEPA count against Salcedo fails to state a claim.

## V.     CONCLUSION

For the reasons elaborated above, the Court **GRANTS** in part, and **DENIES** in part Defendant Captain Thomas Salcedo's motion to dismiss. Count IX is dismissed; all other relief is denied.

An appropriate Order accompanies this memorandum opinion.

s/ William J. Martini<br>
**William J. Martini, U.S.D.J.**

DATE: February 2, 2010